1998-NMSC-043

968 P.2d 1173

STATE of New Mexico ex rel. Maudene HARAGAN, Pauline Clark, David C. Sanders, Jake Lopez, Board of County Commissioners of Roosevelt County, Pat Snipes–Chappelle, Gordon N. Crane, Judy Dorothy Woodward, Sandy Padilla, W.L. Mobley, Rita Torres, Joyce Deavours, W.A. Snipes, Patricia Aragon, James McSwane, and Eugene Gilbert, Petitioners–Appellees,

v.

David HARRIS, Secretary of the Department of Finance and Administration, and Jeff Condrey, Director of the Local Government Division, Respondents–Appellants.

No. 24365.

Supreme Court of New Mexico.

Oct. 21, 1998.

Rehearing Denied Dec. 4, 1998.

Daniel A. Bryant, Ruidoso, for Petitioners–Appellees.

Hon. Tom Udall, Attorney General, Elizabeth A. Glenn, Assistant Attorney General, Peter Franklin, Department of Finance and Administration, Santa Fe, for Respondents–Appellants.

## OPINION

McKINNON, Justice.

{1} Petitioners are elected officers from various counties who happened to be at midterm on the effective date of a salary increase. They, along with all elected county officers in their respective counties, were granted a salary increase by their local county commissions in accordance with NMSA 1978, § 4–44–12.3 (1991). All of the pay raises were to be effective on January 1, 1995, without regard to whether an officer was in midterm or starting a new term. *See id.* Because many elected county officers serve staggered terms, this effective date fell in the midst of a term of office for some officers, like Petitioners. Respondents, the Secretary of the New Mexico Department of Finance and Administration and the Director of the Local Government Division of that department (collectively, the Department), refused to approve county budget amounts for the raises of those county officers in midterm, citing Article IV Section 27 of the New Mexico Constitution. The effect of this action was to deny to Petitioners and about 165 others [1] the salary increases their counties had decided were merited and due, while their colleagues who happened to begin new terms on January 1, 1995, were granted increases in compensation.

{2} Petitioners challenged the Department's action in district court by seeking declaratory judgment and a writ of mandamus compelling the Department to approve the midterm salary increases. After trying the case on stipulated facts, the district court entered declaratory judgment in favor of Petitioners and issued the writ of mandamus ordering the Department to approve all county budgets which granted salary increases for midterm officers. The Department appealed, and the Court of Appeals certified the question to this Court.

{3} We now reverse the district court's judgment. We hold that the midterm increases violate Article IV Section 27 of the New Mexico Constitution, which provides that compensation for public officers shall not "be increased or diminished during [her or] his term in office, except as otherwise

provided in this constitution." N.M. Const. art. IV, § 27.

## DISCUSSION

■ {4} At issue in this case is the relationship between two state constitutional provisions. Article X Section 1 provides:

The legislature shall at its first session classify the counties and fix salaries for all *county officers,* which shall also apply to those elected at the first election under this constitution. And *no county officer shall receive to [her or] his own use any fees or emoluments other than the annual salary provided by law,* and all fees earned by any officer shall be by [her or] him collected and paid into the treasury of the county.

N.M. Const. art. X, § 1 (emphasis added). Article IV Section 27 provides:

No law shall be enacted giving any extra compensation to any *public officer,* servant, agent or contractor after services are rendered or contract made; *nor shall the compensation of any officer be increased or diminished during [her or] his term of office, except as otherwise provided in this constitution.*

N.M. Const. art. IV, § 27 (emphasis added). We first indicate whether the "county officers" named in Article X Section 1 are "public officers" as that term is used in Article IV Section 27. In *State ex rel. Baca v. Montoya,* 20 N.M. 104, 108–09, 146 P. 956, 957 (1915), this Court held that in the absence of an appropriation from the legislature, an appointed deputy county assessor could not be paid a salary because he was a "public officer" within the meaning of Article X Section 1. *See also Pollack v. Montoya,* 55 N.M. 390, 392–95, 234 P.2d 336, 338–39 (1951). Clearly, all of the elected county officers here are public officers.

A. **ARTICLE X SECTION 1 CONTAINS NO LANGUAGE THAT WOULD EXPRESSLY OR IMPLIEDLY "PROVIDE OTHERWISE" THAN THE RULE IN ARTICLE IV SECTION 27.**

■ {5} Article IV Section 27 states a general rule that salary changes shall not

---

1. At oral argument, Petitioners stated that the Department's action affected about 165 county officers, all of whom were in midterm on the effective date of the salary increases.

become effective before the expiration of current terms. That general rule also accommodates an exception: changes effective in midterm can occur *if* a provision in the Constitution "provides otherwise." Article IV Section 27 thus requires us to examine the particular constitutional provision (not, as the dissent suggests, a legislative enactment) and to determine whether it is governed by the general rule or the exception.

{6} There is no language in Article X Section 1 that provides for an exception to the prohibition in Article IV Section 27. The first sentence of Article X Section 1 does grant the Legislature the power to set county officers' salaries: "The [L]egislature shall at its first session classify the counties and fix salaries for all county officers, which *shall also apply to those elected at the first election* under this constitution." N.M. Const. art. X, § 1 (emphasis added). However, there is no expression or implication in this language that salary changes can be made effective before the expiration of current terms. *Cf. Blackburn v. Board of County Comm'rs,* 67 Wyo. 494, 226 P.2d 784, 787–88 (Wyo.1951) ("[N]either by express provision nor by implication does [the Wyoming constitutional provision analogous to Article X Section 1] say that salaries of county officials could be increased or diminished after their election or appointment and during their term of service."). A constitutional provision that grants salary authority to the legislature, without more, must be subject to the general rule. This language appears to be exactly the kind of grant of legislative power that Article IV Section 27 was designed to limit. *See Board of Comm'rs v. Henry,* 33 Okla. 210, 126 P. 761, 762–63 (Okla.1912).

■ {7} Petitioners argue, and the dissent apparently agrees, that the language in the second sentence of Article X Section 1, "no county officer shall receive . . . any fees or emoluments other than the annual salary provided by law," implicitly grants "plenary, unfettered power to the legislature to set salaries." They conclude that exercise of such power is an exception to the Article IV Section 27 bar on midterm changes. We cannot agree. By this language the framers implicitly acknowledged the power of the Legislature to set the salaries of county officials; however, nothing in this language expressly or impliedly authorizes salary increases to be made effective before the expiration of current terms. Further, Article X Section 1 furnishes no guidance on *when* salary changes may be made, which also supports our view that the general rule applies. *See Blackburn,* 226 P.2d at 788 ("Indeed, there is nothing in the language of [the Wyoming analog of Article X Section 1] . . . which could in a fair interpretation of that language convey to the ordinary mind of the electorate that anything was intended which would interfere with the prohibition as to the alteration of salaries embodied in the phraseology of [the Wyoming analog of Article IV Section 27]."). We simply cannot read this language as permitting salary increases for county officers *to be effective before the expiration of current terms.*[2]

■ {8} The purpose of the language in Article X Section 1 on which Petitioners rely is to replace the fee-based system of compensation operated by the counties prior to statehood with a salary-based system controlled by the Legislature. *See State ex rel. Gilbert v. Board of Comm'rs,* 29 N.M. 209, 213, 222 P. 654, 655 (1924); *cf.* Thomas J. Mabry, *New Mexico's Constitution in the Making—Reminiscences of 1910,* 19 N.M. Hist. Rev. 168, 173 (1943) (At the time the state constitution was drafted in 1910 "[b]oth parties were united in its purpose to end the pernicious and extravagant fee system for county officers."). While this provision undoubtedly required the Legislature to shoulder more authority in determining the compensation afforded to county officers, it still shared much in common with the purpose of Article IV Section 27. Both provisions are intended to preclude arbitrary variations in compensation that might "harass and cripple

2. The dissent contends that our interpretation of Article IV Section 27 renders its "otherwise provided" language superfluous. We disagree. Our Constitution contains no less than ten provisions setting the compensation for various public officers, and no two contain identical language. It may very well be that the exception *does* apply to other officials; however, that issue is not before us.

the [county] officer by reducing [her or] his compensation during [her or] his service [or] cause the bestowal of an unmerited increase." *Gilbert,* 29 N.M. at 214, 222 P. at 655. In light of this shared purpose, we doubt that the framers intended Article X Section 1 to allow the Legislature to cause precisely the kind of variations in compensation for county officers that the abolition of the fee-based system of compensation was designed to eliminate.

{9} The fact that the Legislature delegated the salary decision, within limits, to the counties in Section 4-44-12.3 does not alter our conclusion. Both the abolition of the fee-based system of compensation and the rule against midterm salary increases are intended to prevent fluctuations in compensation that result from political pressure and conflicts of interest. *See Gilbert,* 29 N.M. at 214, 222 P. at 655 (framers intended to substitute a salary system of compensation for the fee basis that had existed); *cf. Blackburn,* 226 P.2d at 792 ("The primary reason that so many states have provisions against the practice (of altering a public officer's compensation by legislative enactment during [her or] his present term) is to relieve the pressure brought to bear upon lawmakers to grant increases." (quoting Russell R. Storm, Jr., Note, *Constitutional Law—Rights of Public Officials in Nebraska to Changes in Compensation During Terms of Office,* 30 Neb. L.Rev. 112, 114–15 (1950))). We are not persuaded that having the counties instead of the Legislature set the salaries for county officials relieves the pressures and conflicts to increase salaries noted above. On the contrary, such a delegation of power may have the opposite effect where, as here, the statute allows some county officers to vote on their *own* salary increases. We believe this is the kind of scenario that the framers sought to avoid by replacing the fee-based system of compensation for county officers with a salary-based system, and by building in to the constitution a system whereby there is to be one election for any county position before salary changes for that position become effective.

## B. *GILBERT* HOLDS THAT LEGISLATION PASSED UNDER ARTICLE X SECTION 1 IS SUBJECT TO THE PROHIBITION IN ARTICLE IV SECTION 27

{10} In *Gilbert,* our Court referred to both Article IV Section 27 and Article X Section 1 in holding that a legislative reduction of the compensation of elected county officers at midterm was violative of Article IV Section 27. *Gilbert,* 29 N.M. at 211, 213, 219, 222 P. at 654, 655. There, the Legislature established five classes of counties based on the assessed valuation of property in the county, and acted under its Article X Section 1 authority to tie the compensation received by elected county officers to this classification system. 29 N.M. at 210–11, 222 P. at 655. The operation of the classification system in *Gilbert diminished* the compensation received by elected county officers during their term of office. *Id.* The *Gilbert* court held that to the extent the legislation resulted in *midterm* compensation changes, it was unconstitutional since Article IV Section 27 "expressly prohibits the compensation of any officer being increased or diminished during his [or her] term of office." *Id.* at 213, 219, 222 P. at 655, 657. In sum, *Gilbert* held that legislation setting salaries of county officers passed pursuant to Article X Section 1 is subject to Article IV Section 27.

{11} The issue presented here is essentially the same, although it involves an increase rather than a decrease in compensation. The Legislature acted under its Article X Section 1 authority to enact NMSA 1978, § 4-44-12.3(B), which delegated to the various counties the authority to set salary increases for elected officers by a simple majority vote of the respective boards of county commissioners. However, the Legislature also provided "that no salary increases shall take effect until the first day of the term of the first elected county official who takes office after the date that salary increase is approved, *at which time the salary increase shall take effect for all county-elected officials.*" NMSA 1978, § 4-44-12.3(B) (1991) (emphasis added). Because of staggered terms, the effective date chosen by the Legislature happened to fall, for certain officials

like Petitioners, in midterm. Under *Gilbert*, these midterm changes are unconstitutional as being violative of Article IV Section 27.

{12} We see no compelling reason to overrule *Gilbert*. We believe that to do so would be to ignore the presence and meaning of the rather clear language in Article IV Section 27. We cannot say that the *Gilbert* Court's interpretation of this section is "no more than a remnant of an abandoned doctrine[, or that its] premises of fact have so changed as to render its central holding irrelevant or unjustifiable." *Cf. Planned Parenthood v. Casey*, 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). If Petitioners wish to demonstrate that the policies served by these provisions are no longer necessary, as the dissent contends, and show that concerns of the framers and the *Gilbert* Court are no longer present, they should address their arguments to the Legislature and the electorate. We are not the appropriate forum to amend the Constitution.

{13}. We acknowledge the inequity in our result. The Legislature, by enacting Section 4–44–12.3, attempted to mitigate the disparate impact of salary raises on county officers who now serve staggered terms under the 1993 amendments to Article X Section 2. However, the Legislature does not have the constitutional authority to "provide otherwise." Article IV Section 27 dictates that such exceptions must come from elsewhere in "this constitution ." The remedy that Petitioners seek is unavailable through statute or through this Court. We simply are bound by constitutional provisions and the reasonable interpretations of those provisions. The Constitution must be changed to achieve Petitioners' desired result.

## CONCLUSION

{14} The constitutional language is clear. Neither the text nor the purpose of Article X Section 1 supports Petitioners' interpretation of a grant of "plenary, unfettered power to the Legislature to set salaries" of county officers. There is no grant by Article X Section 1 to *set* an annual salary contrary to Article IV Section 27. Those salary increases passed under NMSA 1978, § 4–44–12.3 (1991) that were effective midterm are therefore unconstitutional. We reverse and re-

mand to the district court with instructions to dismiss the complaint with prejudice.

{15} **IT IS SO ORDERED.**

FRANCHINI, C.J. and MINZNER, J., concur.

SERNA, Justice (dissenting).

{16} The majority appears to address the following question: Does Section 4–44–12.3 *comply* with the New Mexico Constitution? From this posture, the majority concludes that Article IV, Section 27 contains plain language which mandates a result even the majority concedes to be inequitable. I respectfully suggest that this case presents a slightly different question: Does Section 4–44–12.3 *violate* the New Mexico Constitution? I believe this subtle variation in posture masks a more fundamental concern—the relationship between the judicial and legislative branches of government. I conclude that the Legislature acted in a reasonable manner that is not in violation of the New Mexico Constitution. As a result, I would not strike down the Legislature's attempt to treat all county officials equally. I therefore respectfully dissent.

## I. The Majority Opinion Fails to Establish a Constitutional Violation

{17} The majority holds that Article IV, Section 27 applies to county officials and that Article X, Section 1 does not constitute an exception from Article IV, Section 27. *See* NM Const. art. IV, § 27 (providing that "the compensation of any officer" shall not "be increased or diminished during his [or her] term of office, except as otherwise provided in this constitution"); NM Const. art. X, § 1 (providing that "no county officer shall receive to his [or her] own use any fees or emoluments other than the annual salary provided by law"). In support of the latter holding, the majority relies on the plain language of Article IV, Section 27, this Court's opinion in *State ex rel. Gilbert v. Board of Comm'rs*, 29 N.M. 209, 222 P. 654 (1924), and the policies protected by Article IV, Section 27. While I agree that county officers fall within the meaning of public officers in Arti-

cle IV, Section 27, I believe that none of the bases relied upon by the majority clearly demonstrates that Article IV, Section 27 prohibits the Legislature's actions in this case.

{18}  First, the majority concludes that Article X, Section 1 does not "provide otherwise" so as to satisfy the exception clause of Article IV, Section 27. The majority concludes that the constitutional grant of legislative power over county officer salaries contained in Article X, Section 1 fails to "expressly or impliedly authorize[ ] salary increases to be made effective before the expiration of current terms." I agree that Article X, Section 1 does not expressly authorize a midterm salary change; however, I believe that the exception clause of Article IV, Section 27 may be satisfied by implied grants of authority, a proposition the majority also appears to accept, and that the language of Article X, Section 1 implicitly grants authority to the Legislature to alter county officer salaries midterm.

{19}  Rules of constitutional construction dictate that we avoid interpreting the Constitution so as to render its language surplusage. *Hannett v. Jones,* 104 N.M. 392, 395, 722 P.2d 643, 646 (1986) (relying on "the principle that constitutions must be construed so that no part is rendered surplusage or superfluous"). Based on this principle, I believe we must recognize implied grants of authority to alter salaries during the term of office in the interpretation of Article IV, Section 27. Otherwise, no provision in the Constitution at the time of ratification would qualify as an exception to Article IV, Section 27. Such a result would be contrary to logic and to rules of constitutional and statutory construction. For example, Article V, Section 12 states that "[t]he compensation of [specified executive officers] may be increased or decreased by law after the expiration of ten years from the date of the admission of New Mexico as a state." In 1973, a New Mexico district court, upholding midterm raises for executive officers, concluded that the exception clause of Article IV, Section 27 "beats a trail" to Article V, Section 12. *State ex rel. Thompson v. Olmstead,* No. 45,038, slip op. at 11 (N.M.Dist.Ct. Jan. 11, 1973). However, even though Article V, Section 12 is more explicit in granting salary-altering power to the Legislature than any other contained in the Constitution as it originally read, it still does not expressly allow for a salary change "midterm" or "during the term of office ." In effect, it is the equivalent of Article X, Section 1: it provides general salary-fixing power (the power to increase and decrease salary) to the Legislature. Thus, an interpretation of Article IV, Section 27 requiring express authorization to alter salaries during the term of office would render the exception language of Article IV, Section 27 surplusage. Presumably, the drafters of the Constitution would not have included the exception clause of Article IV, Section 27 if no exception in the Constitution existed. *See Hannett,* 104 N.M. at 393, 722 P.2d at 644 ("We will not interpret constitutional language too literally so as to defeat the general principles of government outlined by the instrument, but will give effect to its spirit and intent where it can be clearly ascertained."). Therefore, I conclude that the exception clause of Article IV, Section 27 may be satisfied by express constitutional grants of general legislative salary authority that implicitly authorize midterm salary changes.

{20}  Article X, Section 1 grants the Legislature general salary-fixing power for county officers. I believe this express grant of authority also implies authority to alter salaries during the term of office. In a previous interpretation of Article IV, Section 27, the Attorney General stated that "[w]hen the *Constitution itself* says that the salary for a particular office 'shall be as prescribed by law,' *without any limiting phrase,* such a provision must be construed" as qualifying as an exception to Article IV, Section 27. N.M. Att'y Gen. Op. 73–8 (1973) (second emphasis added) (discussing district attorney salaries); *see also* N.M. Att'y Gen. Op. 92–08 (1992); N.M. Att'y Gen. Op. 79–27 (1979). The Supreme Court of Appeals of West Virginia reached a similar conclusion in the interpretation of its analogous constitutional provisions:

> The pertinent portion of [the relevant constitutional] amendment contains these words: "The judges of the Supreme Court of Appeals and of the circuit courts shall

receive such salaries as shall be fixed by law, for those now in or those hereafter to come into office". This language has not heretofore been construed by this Court, but it is evident that its plain effect is to permit the Legislature to increase or diminish, within reasonable limitations, the salaries of the judges of these courts, at any time, before, after, and during their respective terms of office.

*Cf. Harbert v. County Court,* 129 W.Va. 54, 39 S.E.2d 177, 185 (W.Va.1946). The West Virginia court reached this conclusion despite the fact that West Virginia's analog to Article IV, Section 27 does not include an exception clause equivalent to the one found in Article IV, Section 27. *Id.* at 184 (" 'Nor shall the salary of any public officer be increased or diminished during his term of office.' " (quoting W. Va. Const. art. VI, § 38)); *id.* at 185 ("The language of Section 38 of Article VI of the Constitution is general and comprehensive and it contains no terms of limitation or exclusion."). I believe the Attorney General's interpretation of Article IV, Section 27 and the West Virginia court's interpretation of its analogous provision, that a general constitutional grant of legislative authority over salary constitutes an exception to the prohibition against midterm salary alteration, are consistent with rules of constitutional construction and would avoid rendering our Constitution's language surplusage, as discussed above. As a result, I conclude that such an interpretation represents a reasonable construction of Article IV, Section 27. Further, because Article X, Section 1 would be excepted from Article IV, Section 27 under such an interpretation, I believe the constitutional provisions at issue in this case are, at the very least, ambiguous. *Cf. State v. Elmquist,* 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992) ("A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses."). Thus, I respectfully disagree with the majority's characterization of Article IV, Section 27 as containing plain language.

{21} Second, the majority concludes that "[u]nder *Gilbert,* these midterm changes are unconstitutional as being violative of Article IV Section 27." It is true that this Court, in *Gilbert,* determined that the Legislature's decrease of salary during the term of office for county officials violated Article IV, Section 27. *See Gilbert,* 29 N.M. at 219, 222 P. at 657. However, this Court did not address whether the salary-fixing authority in Article X, Section 1 constituted an exception within the meaning of Article IV, Section 27, and it does not appear that this issue was raised by the parties. Rather, it appears that the Court assumed that Article X, Section 1 was subject to Article IV, Section 27, *see Gilbert,* 29 N.M. at 213, 222 P. at 655, and, instead, focused on the issue of whether Article IV, Section 27 applied to both constitutionally and statutorily created public offices. *See Gilbert,* 29 N.M. at 215–19, 222 P. at 656–57. As a result, I do not believe that *Gilbert* is controlling as to the specific issue presented by the parties in this case. *See Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (" 'The general rule is that cases are not authority for propositions not considered.' ") (quoting *Sangre de Cristo Dev. Corp. v. City of Santa Fe,* 84 N.M. 343, 348, 503 P.2d 323, 328 (1972)). As a result, I believe it is unnecessary to consider overruling *Gilbert.*

{22} The majority finally contends that the policies of Article IV, Section 27 are compelling in this case because "the statute allows some county officers to vote on their *own* salary increases." I respectfully disagree. Article IV, Section 27 is contained within the legislative article of the Constitution. It is clearly a limitation on the *Legislature's* authority. This provision is not intended to remedy any potential abuse of power or potential impropriety by *county officers.* While the concern about county official self-interest may be legitimate, it is for the Legislature, having constitutional authority over county officers' salaries, to address these concerns. As a result, I believe that the concern over county official self-interest does not justify the application of Article IV, Section 27 in this case and is, in fact, wholly inapposite to the interpretation of Article IV, Section 27. Therefore, I am of the opinion that the three primary reasons relied upon by the majority fail to demonstrate any constitutional violation in this case. To the contrary, I believe that the

Legislature diligently complied with the New Mexico Constitution.

## II. Standard of Review

{23} The judiciary serves a vital, though somewhat circumscribed, role in ensuring that laws comply with the New Mexico Constitution. Certainly, "[i]t is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). Nonetheless, we must respect the Legislature's constitutional role as well. The New Mexico Constitution establishes the legislative branch as the entity to represent the collective will of the populace for purposes of creating laws to effectuate the public policy of the State. *See Eturriaga v. Valdez*, 109 N.M. 205, 209, 784 P.2d 24, 28 (1989) ("It is not the province of this Court to invalidate substantive policy choices made by the legislature."). As a result,

> [l]egislative acts are presumed to be valid and cannot be declared invalid "unless the court is clearly satisfied that the legislature went outside the constitution in enacting them." It is the duty of an appellate court to uphold such legislation unless the court is satisfied beyond all reasonable doubt that the statute is unconstitutional.

*Mott v. Sun Country Garden Prods., Inc.*, 120 N.M. 261, 266, 901 P.2d 192, 197 (Ct.App. 1995) (quoting *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988)).

{24} The profound responsibility of evaluating the constitutionality of a law duly passed by our Legislature is not taken lightly, either by myself or the majority. Nonetheless, because reasonable doubt exists concerning any potential constitutional violation, I respectfully suggest that this case calls for judicial restraint rather than judicial activism. I believe such a position is particularly appropriate in light of the fundamental nature of the power exercised by the Legislature in this case: "The power of regulating by law the compensation of public officers is inseparable from one of the broadest and most important fields of legislative power, namely, that of creating the whole machinery of government and providing for its adminis-

tration." *McGovern v. Mitchell*, 78 Conn. 536, 63 A. 433, 439 (Conn.1906) (discussing the constitutionality of a statute increasing the salary of public officers during their term of office).

## III. Section 4–44–12.3 Complies with the Constitution

{25} Three different circumstances under which the Legislature promulgated Section 4–44–12.3 separately persuade me that reasonable doubt exists as to whether this law violates the Constitution and, in combination, convince me that the Legislature actually complied with the Constitution. First, as discussed above, I believe that the relationship between Article X, Section 1 and Article IV, Section 27 is unclear and that the exception clause of Article IV, Section 27 is ambiguous. Under these circumstances, I believe we should defer to the Legislature's interpretation of the New Mexico Constitution. *See Mott*, 120 N.M. at 266, 901 P.2d at 197; *cf. Harbert*, 39 S.E.2d at 185.

{26} Second, and related to the ambiguity of Article IV, Section 27, I believe that deference to the Legislature is especially warranted where the law in question does not offend the purposes of the applicable constitutional provision. Article IV, Section 27 is intended to prevent:

> legislative oppression which might flow from party rancor, personal spleen, enmity, or grudge. These could well harass and cripple the officer by reducing his compensation during his service; while, on the other hand, party feeling, blood, or business relations might be combined in such pernicious activity in the form of strong and powerful lobbying as to sway the members of the Legislature and cause the bestowal of an unmerited increase.

*Gilbert*, 29 N.M. at 214, 222 P. at 655. I believe the Legislature carefully drafted Section 4–44–12.3 in order to avoid these dangers. First, the Legislature has attempted to distance itself from potential oppression or unmerited reward by delegating the salary power (within a specified maximum) to county officials. In fact, the Legislature has so successfully insulated itself from improper decisions that the majority is forced to strain

the purposes of Article IV, Section 27 by applying them directly to county officials.

{27} In addition, the Legislature has increased the salary of all county officers in all counties at the same time. *See* NMSA 1978, §§ 4–44–4 to –8 (1994, prior to 1999 amendment). In doing so, the Legislature has ensured greater oversight by the electorate in preventing legislative oppression and has reduced the possibility that inappropriate lobbying by a small number of county officers, or even a small number of counties, will result in unmerited salary increases.

{28} In this regard, I question whether Article IV, Section 27 has any application to the present matter. Article IV, Section 27 prohibits midterm salary alterations for "any officer" during "his [or her] term of office." I believe this language can be fairly interpreted as intentionally emphasizing singular effects. For example, in *Gilbert*, this Court characterized Article IV, Section 27 as protecting "the individual officer against legislative oppression." *Gilbert*, 29 N.M. at 214, 222 P. at 655. Perhaps the drafters of the Constitution sought to prevent the Legislature from granting increases or imposing decreases in salary against individual officers, or offices, to the detriment or gain of other officers occupying similar positions.[1] *See* N.M. Att'y Gen. Op. 92–08 ("Indeed, a situation in which the Legislature could reward a single commissioner starting a new term with a salary increase or punish one with a decrease, could result in the sort of abuses [Article IV, Section 27] seeks to prevent."). Certainly, there are other provisions in the Constitution that protect against broader-reaching unwarranted salary alterations for public officers: namely, answerability to voters in elections, *see* NM Const. art. IV, § 4 (terms of office), and coordinate branch independence as required by Article III, Section 1 (separation of powers).

{29} Thus, I do not believe that Section 4–44–12.3 violates the purposes of Article IV,

Section 27. As a result, because the Legislature's actions do not clearly contravene the purposes of Article IV, Section 27, I do not believe that this is the proper case to exercise our powers of constitutional guardianship.

{30} Finally, when the Legislature attempts to resolve a conflict between two competing constitutional provisions or principles and does not clearly offend either one, I believe it is proper to yield to the Legislature. In *Gilbert*, this Court determined that the purposes of Article IV, Section 27 applied to county officers. However, the Legislature promulgated Section 4–44–12.3 under substantially different constitutional circumstances than existed at the time our Constitution was ratified. At the time this Court decided *Gilbert*, county officials served two-year terms that were not staggered. NM Const. art. X, § 2 (as amended 1914, prior to 1992 amendment). Thus, any prohibition against midterm raises did not result in inequitable salaries among officers occupying the same position. Today, however, county officials are required by constitutional amendment to serve staggered terms, and the term of office has increased from two years to four years. NM Const. art. X, § 2 (as amended 1992). As this case demonstrates, there is now a potential for different salaries for the same office based merely on circumstance, the year of election. The result is that county officials are not entitled to a raise for an entire four-year term, even though officers holding the same seat for less time (and, potentially, with less experience) receive greater salaries. These changed constitutional circumstances should be relevant in our interpretation of Article IV, Section 27. "Words employed in a constitution are not necessarily static in meaning but grow and change as the conditions of modern society and knowledge grow and change through the passage of years." *Humana of New Mexico,*

---

1. In fact, the majority relies on the prohibition against fees and emoluments contained in Article X, Section 1 (prohibiting the "giving any extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made"). This suggests that the purpose of the constitutional provision was to abolish a

system of gratuities, a system largely focused on individual, rather than general, rewards. *Cf. McGovern*, 63 A. at 440 (concluding that Connecticut's equivalent of Article IV, Section 27 was enacted in response to gratuities paid by the General Assembly to "particular officers").

*Inc. v. Board of County Comm'rs,* 92 N.M. 34, 36, 582 P.2d 806, 808 (1978).

{31} The Legislature very conscientiously attempted to alleviate the problem created by the new constitutional structure of county offices by expressly providing a policy of equal salaries. *See* § 4-44-12.3; *see also* NMSA 1978, § 4-44-12.1 (1982) ("If any officer of a county receives a salary increase as permitted under this act [4-44-4 to 4-44-12.2], all other officers in that county shall receive a salary increase of an equal percentage."). In doing so, the Legislature sought to effectuate a separate constitutional principle of considerable importance: equal protection of the laws. *See* U.S. Const. amend. XIV; NM Const. art. II, § 18. At least one other state has held that a law that results in lower salaries for some state officers due to their midterm status, enacted pursuant to a constitutional provision equivalent to Article IV, Section 18, fails to survive rational basis scrutiny under the Equal Protection Clause of the United States Constitution. *See Kirk v. Board of County Comm'rs,* 595 P.2d 1334, 1335-37 (Okla.1979). *See generally* U.S. Const. art. VI, cl. 2 (providing that the United States Constitution is supreme over state constitutions). I do not intend to suggest that the Fourteenth Amendment or Article II, Section 18 would mandate a midterm raise in New Mexico each time the Legislature alters the salaries of public officers or that these constitutional provisions necessarily *required* the Legislature to enact Section 4-44-12.3 in its current form. Nonetheless, I believe that equal protection principles partially explain the Legislature's action in this case. The Legislature, which we presume to be aware of the *Kirk* decision and to have contemplated the Fourteenth Amendment and Article II, Section 18, was faced with an ambiguous constitutional provision in Article IV, Section 27, changing constitutional circumstances, and an inequitable result potentially violative of both the federal and state Constitutions. The Legislature prudently responded to this enigmatic situation by discovering a middle ground that satisfies the constitutional principles embodied in Article IV, Section 27 and, at the same time, promotes the constitutional principle of equal protection. Under these circumstances, I believe it is not prudent for us to strike down the Legislature's obviously thoughtful choice.

{32} For these reasons, I conclude that Section 4-44-12.3 does not violate the New Mexico Constitution. I admire the Legislature's goal of equality and determine that its means were reasonable. Thus, I would uphold Section 4-44-12.3 and affirm the district court's order granting the officers' petition for writ of mandamus.

BACA, J., concurs.