2001-NMSC-009

20 P.3d 126

**In the Matter of the EXTRADITION OF Michael Saiz MARTINEZ.**

**Hon. Gary Johnson, Petitioner,**

**v.**

**Hon. James Shuler, District Judge for the Fifth Judicial District, Respondent.**

**No. 25,780.**

Supreme Court of New Mexico.

March 21, 2001.

Patricia A. Madrid, Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hon. James L. Shuler, Carlsbad, NM, Pro Se.

## OPINION

BACA, JUSTICE.

{1} This is a proceeding invoking our original jurisdiction in prohibition and superintending control as expressly granted to this Court by the New Mexico Constitution. *See* N.M. Const. art. VI, § 3 ("The supreme court shall have ... superintending control over all inferior courts; it shall also have power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction and all other writs necessary or proper for the complete exercise of its jurisdiction...."). The Governor challenges the propriety of an injunction prohibiting the use of his extradition warrant in its current form issued by the Honorable Judge James L. Shuler, District Judge for the Fifth Judicial District. The Governor seeks relief from the injunction by requesting a writ of prohibition or, in the alternative, a writ of superintending control. We conclude that the district court had proper subject matter and personal jurisdiction in this case and, therefore, the Governor is not entitled to the writ of prohibition. We also hold that Judge Shuler's construction of NMSA 1978, § 31–4–7 (1937) was erroneous and that the injunction interferes with an express power granted to the Governor. Based on this, the Governor's petition for the writ of superintending control is granted.

{2} The underlying matter before the district court was the extradition of Michael Saiz Martinez to the State of Arizona. Arizona sought the extradition of Mr. Martinez for a violation of his probation. The Governor of the State of New Mexico, pursuant to the Uniform Criminal Extradition Act, NMSA 1978, §§ 31–4–1 to –31 (1937, as amended through 1981), issued his Extradi-

tion Warrant ordering Mr. Martinez's extradition. Mr. Martinez was arraigned on the Governor's Warrant in the Fifth Judicial District before Judge Shuler. At his arraignment, Mr. Martinez challenged his extradition based on an alleged technical defect in the Governor's Extradition Warrant. Mr. Martinez alleged that the Governor's Warrant was technically defective because it failed to inform the arresting officer of his right to a pre-extradition hearing as provided for in NMSA 1978, § 31-4-10 (1937). "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him *unless he shall first be taken forthwith before a judge of a court of record in this state . . . .*" *Id.* (emphasis added). Judge Shuler conducted two hearings on the matter. During these hearings, Judge Shuler heard allegations that an individual had been removed to the State of Texas without being afforded his rights secured by the Extradition Act and the Due Process Clause. *See* U.S. Const. amend. XIV, § 1.

{3} Judge Shuler agreed with Mr. Martinez's contention and found that the Governor's Warrant was "technically defective . . . in that the warrant [did] not include in its recitals language directing law enforcement agents to present the person named in the warrant before a Court of jurisdiction to inform that person of their rights as directed by [Section 31-4-10]." In his ruling, Judge Shuler relied on NMSA 1978, § 31-4-8 (1937), which states:

Such warrant shall authorize the peace officer or other person to whom directed to arrest the accused at any time and any place where [the accused] may be found within the state and to command the aid of all peace officers or other persons in the execution of the warrant, and to deliver the accused, *subject to the provisions of this act* [31-4-1 to 31-4-30 NMSA 1978], to the duly authorized agent of the demanding state.

(Emphasis added.). Judge Shuler concluded that the emphasized portion of this statute should be read in conjunction with Section 31-4-7, which authorizes the issuance of the

Governor's warrant. Based on this construction, Judge Shuler ruled that the Governor's warrant is subject to the provisions of the entire Extradition Act, including the protections found in Section 31-4-10. Since the Governor's warrant does not enumerate the protections found in Section 31-4-10, Judge Shuler concluded that the warrant was technically defective. Based on this technical defect, Judge Shuler enjoined the Governor from using his warrant as currently written in any further extradition proceedings. However, because the technical defect did not deprive Mr. Martinez of his due process rights, Judge Shuler ordered his extradition to Arizona.

{4} Believing that Judge Shuler made a clear error, the Governor now seeks a writ of prohibition or, in the alternative, a writ of superintending control seeking to have the injunction dissolved. The Governor seeks the writ of prohibition by arguing that Judge Shuler was without jurisdiction to issue the injunction because the Governor was not a party to the extradition matter and because the district court was deprived of jurisdiction once Mr. Martinez was extradited. Alternatively, the Governor seeks the writ of superintending control by arguing that New Mexico's Extradition Act does not require the recital mandated by Judge Shuler's injunction. To support this claim the Governor relies on Section 31-4-7, which states, "[t]he warrant must substantially recite the facts necessary to the validity of its issuance," to assert that a cautionary recital is not required in the Governor's warrant. We will address the Governor's entitlement to the writ of prohibition and the writ of superintending control after we examine substantive extradition law.

## I.

{5} The foundation for extradition law is the Extradition Clause of the United States Constitution, which states:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled,

be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const. art. IV, § 2. The Federal Extradition Act, 18 U.S.C. § 3182 (2000), and the Uniform Criminal Extradition Act §§ 1–31, 11 U.L.A. 97 (1995), endow the Extradition Clause with additional meaning, including specific procedures with which to accomplish interstate extradition. New Mexico has adopted the Uniform Criminal Extradition Act as found in Sections 31–4–1 to –30.

{6} Extradition is intended to be "a summary and mandatory executive proceeding." *Michigan v. Doran*, 439 U.S. 282, 288, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). Its purpose is "to preclude any state from becoming a sanctuary for fugitives from justice of another state." *Id.* at 287, 99 S.Ct. 530. The United States Supreme Court has also recognized that "[a] prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer 'hearing' at which he is informed of the receiving State's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request." *Cuyler v. Adams*, 449 U.S. 433, 443, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). These rights are also protected in the New Mexico Uniform Criminal Extradition Act:

> No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel[.]

Section 31–4–10. The issue in this case does not intrude on any of these fundamentals of extradition law. Instead, the question in this case is whether the Governor can be forced to insert a cautionary phrase into his extradition warrant, warning his agents of the procedural requirement of Section 31–4–10, in an effort to ensure that all prisoners are accorded their substantive rights prior to extradition. Since the Governor seeks a writ of prohibition or a writ of superintending control, we will view the issue through the lens provided by these writs.

## II.

{7} The writ of prohibition has been described as "an extraordinary writ, issued by a superior court to an inferior court to prevent the latter from exceeding its jurisdiction, either by prohibiting it from assuming jurisdiction in a matter over which it has no control, or from going beyond its legitimate powers in a matter of which it has jurisdiction." *State ex rel. Harvey v. Medler*, 19 N.M. 252, 258, 142 P. 376, 378 (1914). This Court has further articulated the test as "not whether the court had a right to decide the issue in a particular way, but did it have the right to decide it at all." *State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo*, 70 N.M. 475, 481, 375 P.2d 118, 122 (1962). In this analysis, this Court is concerned with whether the district court had jurisdiction over the subject matter of the dispute and over each of the parties to the dispute. *See id.* As explained below, we conclude that the district court had both subject matter and personal jurisdiction. Thus, we hold that a writ of prohibition is not appropriate in this case.

## A.

{8} Judge Shuler had jurisdiction over the general subject matter of Mr. Martinez's extradition. Section 31–4–10 expressly provides that each person prior to extradition "shall first be taken forthwith before a judge of a court of record in this state," and informed of his or her rights. The court of record in this case was Judge Shuler's court. The Governor does not dispute this notion, but instead asserts that the district court was divested of subject matter jurisdiction once Judge Shuler ruled on the extradition of Mr. Martinez. In other words, the Governor argues that the district court did not have subject matter jurisdiction to issue the injunction once it had decided to extradite Mr. Martinez. This argument overlooks the broad grant of jurisdiction vested in the district courts. "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such

jurisdiction of special cases and proceedings as may be conferred by law...." N.M. Const. art. VI, § 13. "[D]istrict courts ... shall have power to issue writs of habeas corpus, mandamus, *injunction,* quo warranto, certiorari, prohibition and all other writs, remedial or otherwise in the exercise of their jurisdiction...." *Id.* (emphasis added). Here, Mr. Martinez properly argued that he should not be extradited because of a technical defect in the Governor's warrant. After conducting two hearings on the matter, Judge Shuler properly decided that Mr. Martinez had been accorded all of his due process rights and ordered his extradition. Judge Shuler then addressed the merits of Mr. Martinez's contention. It is of little jurisdictional significance that the district court first declared that Mr. Martinez was not specifically harmed and ordered him extradited prior to determining that the Governor's warrant did not comply with the legislative requirements. Either way, this was a proper exercise of the district court's subject matter jurisdiction.

### B.

{9} The Governor challenges the district court's jurisdiction over him by asserting that he was not a party to the proceeding where the injunction was issued. Relying on *Allen v. McClellan,* 77 N.M. 801, 427 P.2d 677 (1967), *overruled on other grounds, N.M. Livestock Bd. v. Dose,* 94 N.M. 68, 71, 607 P.2d 606, 609 (1980), and *State v. Echols (In re Doe),* 99 N.M. 517, 660 P.2d 607 (Ct.App.1983), the Governor contends that his extradition warrant did not bring him or his office within the jurisdiction of Judge Shuler's court. We find this argument unpersuasive.

{10} This Court in *McClellan* invalidated an injunction that restrained "all other persons, including Ladd S. Gordon, Director of the New Mexico Game Commission." 77 N.M. at 805, 427 P.2d at 679 (internal quotation marks omitted). In *McClellan,* we quoted Judge Learned Hand for the proposition that " 'no court can make a decree which will bind any one but a party; ... it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it as-

sumes to do so, the decree is pro tanto brutum fulmen....' " *Id.* (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832 (2d Cir.1930)) (omission in original). This case is both factually and legally distinct from *McClellan.* Judge Shuler's order did not seek to "enjoin the world at large," but narrowly tailored the injunction to the agency and the individual that could effect the changes required by the injunction. Furthermore in this case, the Governor was legally a party. The entire proceedings were premised on the Governor's extradition warrant. It was on the Governor's signature that Mr. Martinez was detained and held for extradition. Finally, at the hearing the district attorney argued on the behalf of the Governor seeking to uphold the Governor's warrant.

{11} Contrary to the Governor's position, we believe that *Echols* supports our decision. In *Echols,* the Court of Appeals stated, "A court may bind people by order if it has jurisdiction of the parties, jurisdiction over the subject matter, and power to decide the particular matter presented." 99 N.M. at 521, 660 P.2d at 611. "Jurisdiction over the person embraces due process notions of contact with the State and sufficiency of notice of the action." *Id.* There is no better notice of an action than to be the instigator as the Governor was in this case. By initiating the proceeding against Mr. Martinez, the Governor subjected himself and his staff to the personal jurisdiction of the district court. Therefore, since Judge Shuler had both proper subject matter jurisdiction and personal jurisdiction in this matter, a writ of prohibition is not appropriate in this case.

### III.

{12} The writ of superintending control is not hampered by the same limitations as a writ of prohibition. "[T]he power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise." *Albuquerque Gas & Elec. Co. v. Curtis,* 43 N.M. 234, 236, 89 P.2d 615, 616 (1939) (quotation marks and quoted authority omitted); *see also* Richard C. Bosson & Steven K. Sanders, *The Writ of Prohibition in New Mexico,* 5 N.M. L.Rev.

91, 122–24 (1974). Early in our jurisprudence, this Court subjected this extraordinary writ to significant self-imposed judicial restraint. This Court said,

> [I]t is well established that it is not a writ of right, granted *ex debito justitiae*, but rather one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case, to be used with great caution for the furtherance of justice when none of the ordinary remedies provided by law are applicable.

*Medler*, 19 N.M. at 259–60, 142 P. at 378. This Court has held that the writ of superintending control is appropriate when "the remedy by appeal seems wholly inadequate . . . or where otherwise necessary to prevent irreparable mischief, great, extraordinary, or exceptional hardship; costly delays and unusual burdens of expense." *State ex rel. Transcon. Bus Serv. v. Carmody*, 53 N.M. 367, 378, 208 P.2d 1073, 1080 (1949).

> "It is the settled law of this jurisdiction that the writ of supervisory control will issue only when a ruling, order, or decision of an inferior court, within its jurisdiction, (1) is erroneous; (2) is arbitrary or tyrannical; (3) does gross injustice to the petitioner; (4) may result in irreparable injury to the petitioner; (5) and there is no plain, speedy, and adequate remedy other than by issuance of the writ."

*Albuquerque Gas & Elec. Co.*, 43 N.M. at 241, 89 P.2d at 619 (quoting *State ex rel. Spinazza v. Dist. Court*, 83 Mont. 511, 273 P. 638, 642 (1929)). Despite the fact that *Albuquerque Gas & Electric Company* expressed these as cumulative elements, we believe that these are independent factors that will be addressed in a successful petition for a writ of superintending control. *See* Bosson & Sanders, *supra*, at 124 ("[T]hese criteria have been variously stated to be either cumulative or independent, it is clear that a prudent litigant will address all of them.").

{13} After a careful and thorough evaluation, we hold that the Governor is entitled to a writ of superintending control. We acknowledge that this is a close case, and that there are a number of compelling arguments both for and against the issuance of the writ. In our opinion, Judge Shuler's ruling cannot

be classified as either "arbitrary or tyrannical." Therefore, we will first review whether Judge Shuler's decision was erroneous, and then we will examine whether the Governor has established the requisite level of irreparable injury necessary for the issuance of the writ of superintending control.

{14} A determination of whether his decision was erroneous is primarily one of statutory construction, which is a question that we review de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). In this analysis we resort to a number of maxims of statutory construction. We must "give a statute its literal reading if the words used are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity or contradiction." *Atencio v. Bd. of Educ.*, 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982). "Unless the context suggests some specialized meaning, we interpret a statute in accordance with the common meaning of the statutory language." *Welch v. Sandoval County Valuation Protests Bd.*, 1997–NMCA–086, ¶ 5, 123 N.M. 722, 945 P.2d 452. In this statutory review, we recognize that "it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

{15} The Governor relies on the plain meaning of Section 31–4–7 to assert that he is not required to insert the cautionary language as mandated by Judge Shuler's injunction. Section 31–4–7 provides: "The warrant must substantially recite *the facts* necessary to the validity of its issuance." (Emphasis added.). The Governor argues that the protections found in Section 31–4–10 are procedural protections that do not have to be incorporated into the Governor's warrant.

> The validity of a governor's warrant for extradition is based solely on what is required before it may issue. By the plain language of the statute, this means those facts and allegations required to exist prior to the moment of issuance. Those facts are the documents depicting the criminal

proceedings, probation or parole violation or an escape.

The Governor does not dispute the mandatory nature of the rights contained in Section 31–4–10; he merely asserts that an enumeration of those rights is not required to be included in his warrant. We agree that the plain meaning of the language, "facts necessary to the validity of its issuance" should control in this case. We believe that "facts necessary to the validity of its issuance," refers to the factual allegations derived from the requisition from the demanding state coupled with any facts uncovered by the Governor's independent investigation. *See* NMSA 1978, § 31–4–3 (1937) (enumerating the factual allegations that must be contained in the demanding state's requisition); NMSA 1978, § 31–4–4 (1937) (authorizing the Governor's investigation of the demand). The facts that support the issuance of the Governor's warrant must exist prior to the issuance of the warrant. Based on this, we believe that the language "facts necessary to the validity of its issuance" is sufficiently "plain and unambiguous" for us to give it its literal reading. *Atencio*, 99 N.M. at 171, 655 P.2d at 1015. Additionally, based on the factual record that we have before us, we cannot say that this result will lead to an "injustice, absurdity or contradiction." *Id.*

{16} Judge Shuler responds to the Governor's "plain meaning" argument by asserting that the language of Section 31–4–7, "facts necessary to the validity of its issuance," is modified by the language in Section 31–4–8, "subject to the provisions of this act [31–4–1 to 31–4–30 NMSA 1978]." He asserts that this language subjects the Governor's warrant to the entire Extradition Act and, therefore, a recital of the procedural protections contained in Section 31–4–10 should be included in the warrant. We do not agree with Judge Shuler's construction of Section 31–4–8. The language from Section 31–4–8 does not modify the Governor's warrant, but instead explains the proceeding phrase, "all peace officers or other persons in the execution of the warrant." Section 31–4–8 creates a direct obligation on the part of peace officers to comply with the Extradition Act. This interpretation is consistent with the legislative scheme as embodied in NMSA

1978, § 31–4–11 (1937). This Section demonstrates that the Legislature intended to create a direct obligation for peace officers charged with extradition:

> Any officer who shall deliver to the agent for extradition of the demanding state a person in [the officer's] custody under the governor's warrant, in willful disobedience to the last section [31–4–10 NMSA 1978], shall be guilty of a misdemeanor and, on conviction, shall be fined (not more than $1,000.00 or be imprisoned not more than six months, or both).

Section 31–4–11. Additionally, Section 31–4–11 provides this Court with a sufficient basis to conclude that the Legislature was fully cognizant of the issue faced by Judge Shuler when it enacted the language "facts necessary to the validity of its issuance." We would be remiss to alter the plain meaning of the statutory language. Therefore, we conclude that Judge Shuler's construction of Section 31–4–7 was erroneous. However, this interpretation does not resolve this matter.

{17} We must view the Governor's entitlement to the writ of superintending control through the substantive requirements of the writ. In order to be entitled to the writ, the Governor must prove that the injunction does a "gross injustice" or that it causes "irreparable injury" to the Governor. We believe the substantial separation of powers concerns implicated in this case provide the requisite level of injury necessary for the issuance of the writ. Article III, Section I of the New Mexico Constitution ensures that "one branch of the state government may not exercise powers and duties belonging to another." *State ex rel. State Corp. Comm'n v. McCulloh*, 63 N.M. 436, 438, 321 P.2d 207, 208 (1957). It is also clear that "[t]he judiciary serves a vital, though somewhat circumscribed, role in ensuring that laws comply with the New Mexico Constitution. Certainly, '[i]t is, emphatically, the province and duty of the judicial department, to say what the law is.'" *State ex rel. Haragan v. Harris*, 1998–NMSC–043, ¶ 23, 126 N.M. 310, 968 P.2d 1173 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803)).

{18} Judge Shuler's ruling intruded on an express power of the Governor. The power and the associate obligations regarding extradition are within the sole province of the Governor.

> [I]t is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this state.

NMSA 1978, § 31–4–2 (1937). He alone is responsible for compliance with all of the procedural protections accorded a prisoner subject to extradition. Judge Shuler's injunction essentially prevents the Governor from exercising his statutorily proscribed duty. Judge Shuler's interference with the Governor's duty threatens the principles that underlie the extradition clause. "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Doran*, 439 U.S. at 287, 99 S.Ct. 530. "The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." *Id.* Based on the factual record before Judge Shuler, his injunction unduly interfered with the powers and associated obligations of the Governor.

{19} Additionally, it appears that the Governor has taken steps to ensure that each prisoner is accorded the procedural protections found in Section 31–4–10. According to the Governor, in each extradition package is a standard letter that includes the following language:

> Upon receipt of this Warrant, please take the above named fugitive before a judge of the court of record in this State in order that the court may advise the fugitive of the demand made for extradition and his/ her legal rights, in this matter all in accordance with Section 31–4–10, NMSA 1978.

While we do not express an opinion with regard to the legal sufficiency of this notice, the existence of this language in the extradition packet demonstrates to this Court that the Governor is fully cognizant of his obligation and has elected this method of instruction for his agents.

{20} Despite this holding, we understand and share Judge Shuler's concern in ensuring that each and every prisoner is accorded their pre-extradition rights. In our view, Judge Shuler merely sought to establish a prophylactic protection of these rights. We agree with the notion expressed in Judge Shuler's brief that the "addition [of the cautionary language] to the Governor's Warrant appears to be the easiest and most economical means of enforcing Section 31–4–10 so that future inmates are not dragged away in the middle of the night in clear violation of the law." There is a significant distinction, however, between interpreting the law and recommending the inclusion of the cautionary language, and actually enjoining the Governor from performing his statutorily proscribed duty.

{21} This holding should in no way be construed as a negative comment on the substantive pre-extradition rights of prisoners. It is clearly the Governor's duty to ensure that each prisoner arrested under a extradition warrant is given a pre-extradition hearing. In fact, a number of courts, including the Tenth Circuit Court of Appeals, have recognized a private cause of action under 42 U.S.C. § 1983 (Supp. II 1996) for failure of an asylum state to follow extradition proceedings. *See Ortega v. City of Kansas City*, 875 F.2d 1497, 1500 (10th Cir.1989) ("[T]here is ample circuit court authority for the proposition that failure to comply with the provisions of the Uniform Extradition Act as enacted by the detaining state can support recovery on § 1983 claims."); *see also Scull v. New Mexico*, 236 F.3d 588, 596 & n. 1 (10th Cir.2000) (collecting authority for the proposition that a deprivation of the procedural protections secured by the Uniform Extradition Act is a cognizable cause of action but deciding that the agents at issue were protected by qualified immunity). Based on this precedent, we can safely say that the protections secured to prisoners awaiting extradition are mandatory and clearly established rights. The Governor should take sufficient measures to ensure

that each prisoner is accorded these fundamental protections. However, Judge Shuler's injunction was improper because it sought to restrain the Governor from performing his statutory obligation and therefore interfered with an independent branch of government without a sufficient factual showing.

## IV.

{22} We hold that the plain meaning of the language "facts necessary to the validity of its issuance" should control in this case. We believe that the substantial separation of powers concerns provide the requisite level of injury necessary to justify the issuance of the writ of superintending control. The Governor's Petition for a Writ of Superintending Control is granted and the injunction prohibiting the use of the Governor's warrant is dissolved.

{23} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, PETRA JIMENEZ MAES, Justice.