## NEW MEXICO EX REL. ORTIZ v. REED

No. 97–1217.   Decided June 8, 1998

PER CURIAM.

Respondent, sentenced to a term of 25 years upon conviction of armed robbery and theft of drugs, was paroled from the Ohio correctional system in 1992.   In the following year Ohio prison officials told respondent they planned to revoke his parole status.   Before the scheduled date of his meeting with his parole officer, respondent fled from Ohio to New Mexico.

Ohio sought extradition and the Governor of New Mexico issued a warrant directing the extradition of respondent. He was arrested in October 1994, and later that year sought

a writ of habeas corpus from the New Mexico State District Court. He claimed he was not a "fugitive" for purposes of extradition because he fled under duress, believing that Ohio authorities intended to revoke his parole without due process and to cause him physical harm if he were returned to an Ohio prison. In January 1995, the New Mexico trial court ruled in favor of respondent and directed his release from custody. The State appealed this order, and in September 1997 the Supreme Court of New Mexico affirmed the grant of habeas corpus. 124 N. M. 129, 947 P. 2d 86 (1997). The State has petitioned for certiorari from that decision.

Article IV of the United States Constitution provides that:

> "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." Art. IV, § 2, cl. 2.

The Extradition Act, 18 U. S. C. § 3182, provides the procedures by which this constitutional command is carried out. In *Michigan* v. *Doran*, 439 U. S. 282 (1978), we said:

> "Once the Governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." *Id.*, at 289.

The Supreme Court of New Mexico agreed that the first three requirements had been met, but decided that respondent was not a "fugitive" from justice; in the words of the Supreme Court of New Mexico, he was a "refugee from injustice." 124 N. M, at 146, 947 P. 2d, at 103. That court held

that respondent fled Ohio because of fear that his parole would be revoked without due process, and that he would be thereafter returned to prison where he faced the threat of bodily injury. This "duress" negated his status as a fugitive under Article IV.

These are serious charges, unrebutted by any evidence at the hearing in the state trial court. It may be noted, however, that the State of Ohio was not a party at that hearing, and the State of New Mexico, which was defending the Governor's action, is at a considerable disadvantage in producing testimony, even in affidavit form, of occurrences in the State of Ohio. Very likely Ohio was aware of our statement in *Sweeney* v. *Woodall*, 344 U.S. 86, 89–90 (1952), that the "scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, . . . do[es] not contemplate an appearance by [the demanding State] in respondent's asylum to defend against the claimed abuses of its prison system" (footnotes omitted).

We accept, of course, the determination of the Supreme Court of New Mexico that respondent's testimony was credible, but this is simply not the kind of issue that may be tried in the asylum State. In case after case we have held that claims relating to what actually happened in the demanding State, the law of the demanding State, and what may be expected to happen in the demanding State when the fugitive returns are issues that must be tried in the courts of that State, and not in those of the asylum State. *Drew* v. *Thaw*, 235 U.S. 432 (1914); *Sweeney* v. *Woodall*, *supra*; *Michigan* v. *Doran*, *supra*; *Pacileo* v. *Walker*, 449 U.S. 86 (1980) *(per curiam)*. As we said in *Pacileo:*

> "Once the Governor of California issued the warrant for arrest and rendition in response to the request of the Governor of Arkansas, claims as to constitutional defects in the Arkansas penal system should be heard in the courts of Arkansas, not those of California. 'To allow

plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Article IV, § 2.' *Michigan* v. *Doran, supra,* at 290." *Id.,* at 88.

There are practical reasons as well as legal reasons which support this result. In a brief filed by 40 States as *amici curiae,* we are advised that in 1997, for example, Ohio made 218 extradition requests from its sister States, and returned 209 prisoners to other States. California in that same year had a total of 685 demands and returns, New York 490, Texas 700, and Pennsylvania 543.* The burden on a demanding State of producing witnesses and records in the asylum State to counter allegations such as those of respondent's in this case would be substantial, indeed.

The Supreme Court of New Mexico also held that the New Mexico Constitution's provision guaranteeing the right "of seeking and obtaining safety" prevailed over the State's duty under Article IV of the United States Constitution. But as long ago as *Kentucky* v. *Dennison,* 24 How. 66 (1861), we held that the duty imposed by the Extradition Clause on the asylum State was mandatory. In *Puerto Rico* v. *Branstad,* 483 U. S. 219, 227 (1987), we reaffirmed "the conclusion that the commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or the courts of the asylum State." And in *California* v. *Superior Court of Cal., San Bernardino Cty.,* 482 U. S. 400, 405–406 (1987), we said:

"The Federal Constitution places certain limits on the sovereign powers of the States, limits that are an essential part of the Framers' conception of national identity and Union. One such limit is found in Article IV, § 2, cl. 2, the Extradition Clause: [text of clause omitted].

---

*The motion of National Association of Extradition Officials for leave to file a brief as *amicus curiae* is granted.

> "The obvious objective of the Extradition Clause is that no State should become a safe haven for the fugitives from a sister State's criminal justice system."

As is apparent from the length of time this proceeding has taken in the courts of New Mexico, it has been anything but the "summary" proceeding contemplated by the decisions cited above. This is because the Supreme Court of New Mexico went beyond the permissible inquiry in an extradition case, and permitted the litigation of issues not open in the asylum State. The State's petition for certiorari is granted, the judgment of the New Mexico Supreme Court is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*