**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

NANCY SCULL, as Personal
Representative of LITTLE ROCK REED,
also known as Timothy Reed,

      Plaintiff-Appellant,

v.

STATE OF NEW MEXICO; COUNTY
OF BERNALILLO; MICHAEL
SISNEROS, individually and in his
capacity as Director of the Bernalillo
County Detention Center; CITY OF
ALBUQUERQUE; ROBERT
SCHWARTZ, Individually and in his
Capacity as District Attorney of
Bernalillo County; TOM UDALL,
Attorney General State of New Mexico,
Individually and in his Capacity as
Attorney General; DOES I THROUGH X,

      Defendants,

and

ANTHONY TUPLER, individually and in
his Capacity as Assistant Attorney
General State of New Mexico;
KATHRYN MARQUEZ; PHILLIP
CHEVES; KATHY SILVA; ALLAN
RACKSTRAW,

      Defendants - Appellees.

No. 99-2215

NANCY SCULL, as Personal
Representative of LITTLE ROCK REED,
also known as Timothy Reed,

       Plaintiff-Appellant,

v.

       No. 99-2216

STATE OF NEW MEXICO; COUNTY
OF BERNALILLO; ROBERT
SCHWARTZ, Individually and in his
Capacity as District Attorney of
Bernalillo County; TOM UDALL,
Attorney General State of New Mexico,
Individually and in his Capacity as
Attorney General; ANTHONY TUPLER,
Individually and in his Capacity as
Assistant Attorney General State of New
Mexico; DOES I THROUGH X,

       Defendants,

and

MICHAEL SISNEROS, Individually and
in his capacity as Director of the
Bernalillo County Detention Center;
CITY OF ALBUQUERQUE; JOE
GUTIERREZ; DAVID SHERMAN,

       Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-98-128-LFG/RLP)**

Submitted on the briefs: [*]

Steven Douglas Looney, Crider, Bingham & Hurst, P.C., Albuquerque, New Mexico, for the Plaintiff-Appellant.

Joan M. Waters, Attorney at Law, Albuquerque, New Mexico, and Jeffery L. Baker, Baker Law Firm, Albuquerque, New Mexico, for the Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, **EBEL**, and **HENRY**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

Appellant Timothy "Little Rock" Reed, now deceased and personally represented by Nancy Scull, brought suit against the State of New Mexico, the County of Bernalillo, the City of Albuquerque, and various state and local officials pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and the New Mexico Tort Claims Act. The essence of Mr. Reed's claims is that the Appellees unlawfully detained him for thirty days without initiating extradition proceedings. During the proceedings below, the district court held that the Appellees were entitled to summary judgment. We affirm the grant of summary judgment, concluding that

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

-3-

the Appellees were immune from the § 1983 claims and that Mr. Reed failed to establish a genuine issue of material fact with respect to his tort claims.

## I. PROCEDURE

On January 30, 1998, Mr. Reed filed a complaint, alleging unlawful detention against the following defendants: the State of New Mexico; the County of Bernalillo; the City of Albuquerque; Tom Udall, the Attorney General of New Mexico; Anthony Tupler, an Assistant Attorney General of New Mexico; Robert Schwartz, the District Attorney for Bernalillo County; and Michael Sisneros, the Director of the Bernalillo County Detention Center ("BCDC").

Approximately a year later, the City of Albuquerque and Mr. Sisneros filed a joint motion for summary judgment; Mr. Udall, Mr. Tupler, and Mr. Schwartz did the same. In his response, Mr. Reed stipulated to the dismissal of the City of Albuquerque. See Aplt's Br. at 3 (No. 99-2216). He also stipulated to the dismissal of Mr. Udall and Mr. Schwartz. See Aplt's Br. at 3 (No. 99-2215). Bernalillo County had been dismissed several months earlier.

On February 16, 1999, Mr. Reed filed a motion to amend the complaint, seeking to join as defendants Alan Rackstraw, Deputy District Attorney for Bernalillo County; Katherine Marquez, Extradition Coordinator for the Bernalillo County District Attorney's office; Kathy Silva, assistant to Ms. Marquez; Joe

-4-

Gutierrez, a major at BCDC; and David Sherman, a BCDC caseworker. In the alternative, Mr. Reed sought to consolidate the case already filed against these defendants.

On June 1, 1999, the district court granted Mr. Reed's motion to amend. The next day, it issued an order granting summary judgment to Mr. Tupler, Mr. Rackstraw, Mr. Cheves, Ms. Marquez, and Ms. Silva (collectively "Prosecutor Appellees"). With respect to the § 1983 claims, the district court found that the Prosecutor Appellees' actions were protected by absolute immunity or, in the alternative, qualified immunity. With respect to the §§ 1985 and 1986 claims, the district court determined that they had been withdrawn by Mr. Reed. Finally, with respect to the various state tort claims, the district court concluded that there had been no waiver of immunity under the New Mexico Tort Claims Act and that the waiver for law enforcement did not apply.

In a separate order, also issued on June 2, 1999, the district court granted summary judgment to Mr. Sisneros, Mr. Gutierrez, and Mr. Sherman (collectively "BCDC Appellees"). With respect to the § 1983 claims, the district court found that the BCDC Appellees were not liable because they had not acted unlawfully. With respect to the §§ 1985 and 1986 claims, the district court determined that they had been withdrawn by Mr. Reed and that, in any event, Mr. Reed had not demonstrated membership in a protected class. Finally, with respect to the claim

of false imprisonment under the New Mexico Tort Claims Act, the district court concluded that Mr. Reed could not establish that the BCDC Appellees knew they had no lawful authority to confine or restrain him.

On August 13, 1999, the district court clarified that Mr. Reed had voluntarily withdrawn his claims against the State of New Mexico.      See Aplt's App. vol. III, doc. 19, at 000665 (district court order, filed Aug. 13, 1999).

## II. BACKGROUND

For ten years, Mr. Reed was incarcerated in Ohio on one charge of theft of drugs and two charges of aggravated robbery. In May 1992, he was released on parole. As a condition of parole, Mr. Reed signed a waiver of extradition which provided, in part, the following:

> [S]hould I leave the State of Ohio without such written permission, I will be considered to be a fugitive from justice as that term is defined in the Uniform Extradition Act and should I be found in another state, I hereby waive extradition and do hereby waive all of my rights to demand the issuance and service of a warrant of extradition and to apply for writ of habeas corpus and waive the issuance and service of all extradition proceedings and I will voluntarily return to the state of Ohio.

Aplt's App. vol. I, doc. 6, at 000213 (waiver of extradition).

A year later, Mr. Reed's parole officer told him to report to the parole office in Ohio to be arrested. (Mr. Reed had been charged with "terroristic threatening" in violation of Kentucky law.)      See Reed v. State ex rel. Ortiz    , 947

-6-

P.2d 86, 91 (N.M. 1997) [hereinafter Ortiz II ], rev'd, 524 U.S. 151 (1998). Mr. Reed, however, did not appear at the appointed time. "Claiming he was forced to choose between violating parole and being beaten or killed at Lucasville [the Ohio correctional facility], he fled Ohio" and eventually ended up in Taos, New Mexico. Id. at 93. Ohio's Adult Parole Authority subsequently issued a state warrant for Reed's arrest. See Aplt's App. vol. II, doc. 8, at 000326 (state warrant).

On October 26, 1994, Mr. Reed was arrested in Taos as a fugitive from justice pursuant to a warrant issued on behalf of the governor of Ohio by the governor of New Mexico. After Mr. Reed's arrest, a fugitive complaint was filed by the Taos County District Attorney, and extradition proceedings were thereby initiated: Mr. Reed was arraigned in state court and given leave to file a petition for a writ of habeas corpus. See Ortiz II , 947 P.2d at 94. Mr. Reed did file a petition and, several months later, state Judge Peggy Nelson granted it. Judge Nelson held that Mr. Reed was not a fugitive because he had left Ohio "under duress and under a reasonable fear for his safety and his life"; she thus ordered that he be released from custody. Reed v. Ortiz , No. 94-1 CR, 1995 WL 118952, at *7 (N.M. Dist. Ct. Jan. 20, 1995) [hereinafter Ortiz I ], rev'd, 524 U.S. 151 (1998).

The state later appealed Judge Nelson's order. Assistant Attorney General

Anthony Tupler represented the state on appeal, and Sue Herrmann represented Mr. Reed. While the Taos County case was on appeal, Mr. Reed was involved in a minor car accident in Albuquerque, New Mexico. When the police arrived at the scene, they learned via a National Crime Information Center ("NCIC") "hit" that he had an outstanding warrant in Ohio for an alleged parole violation. Unbeknownst to the police, the outstanding warrant was the same as that at issue in the Taos County appeal. Mr. Reed was arrested and taken to the BCDC.

Mr. Reed was incarcerated in the BCDC from November 17 to December 16, 1996, for a total of thirty days. Upon first being detained, Mr. Reed was allowed one phone call. He called an attorney, Richard Weiner, who promptly came to the jail. Mr. Weiner brought with him a copy of Judge Nelson's order, which he showed to several BCDC employees. Notably, Judge Nelson's ordered specified that Mr. Reed be released from the Taos County Adult Detention Center ("TCADC"), not the BCDC. See Ortiz I, 1995 WL 118952, at *8 ("It is therefore ordered . . . [t]hat petitioner be released immediately from the Taos County [Adult] Detention Center.").

Soon after Mr. Reed was taken to the BCDC, Katherine Marquez learned of Mr. Reed's detention. Ms. Marquez is the Extradition Coordinator for the Bernalillo County District Attorney's office. As Extradition Coordinator, she is largely responsible for the initiation of extradition proceedings. Kathy Silva is

her part-time assistant, and Assistant District Attorney Phillip Cheves her immediate supervisor. "Following usual procedures . . . , a teletype was sent [by Ms. Marquez] to the Ohio Department of Corrections, advising subject [Mr. Reed] was in custody, and [asking] if a Pre-Signed Waiver, photo[,] and fingerprints were available to determine if fugitive was same subject as wanted by Ohio DOC. Ohio responded immediately with request." Aplt's App. vol. II, doc. 7, at 000308 (interoffice memo written by Ms. Marquez).

On or about the same day, Ms. Herrmann – Mr. Reed's attorney on the Taos County appeal – contacted Ms. Marquez. She told Ms. Marquez about Judge Nelson's order and demanded that Mr. Reed immediately be released. Ms. Herrmann also informed Ms. Marquez that Mr. Reed was contesting his extradition, that the matter was pending in Taos County, and that Mr. Reed could not be extradited. Finally, Ms. Herrmann sent to Ms. Marquez a letter and a copy of Judge Nelson's order.

Ms. Marquez subsequently contacted Mr. Tupler, as Ms. Herrmann had told her that he was in charge of the Taos County appeal. Ms. Marquez asked Mr. Tupler if he was aware of Judge Nelson's order; Mr. Tupler responded that he was. Ms. Marquez then informed Mr. Tupler of her conversation with Ms. Herrmann. Mr. Tupler told Ms. Marquez to proceed as normal – i.e., to initiate extradition proceedings by filing a fugitive complaint – because the Bernalillo

County matter was different from the Taos County matter. Ms. Marquez, however, did not do so because of later events as discussed below.

On November 19, 1996, Ms. Marquez faxed to Mr. Tupler a copy of the presigned waiver of extradition, which had been sent to her by Ohio. (Mr. Tupler did not know that there was such a waiver when Judge Nelson ruled on the Taos County matter. Apparently, Ohio did not realize it had a waiver in its possession until after Mr. Reed was arrested in Bernalillo County.) During his deposition, Mr. Tupler explained his belief that, if there is a "certified or an indisputably authentic presigned waiver, . . . [t]here is no judicial requirement for any kind of proceeding before a court or any other tribunal before that person can be remanded over to the authorities of the demanding state." Aplt's App. vol. I, doc. 6, at 000178 (Mr. Tupler's deposition testimony).

On or about November 20, 1996, Mr. Tupler and Ms. Herrmann spoke. The two arrived at some sort of agreement on how to deal with Mr. Reed's situation, though the terms of the agreement are in dispute. According to Mr. Tupler, the agreement was that

> I myself would not make any effort to have Mr. Reed extradited back to Ohio, period, and that I would speak with the District Attorney's office and advise – request of them, not advise – request of them that they also honor the same agreement that I had made, and give Ms. Herrmann until Friday to get something filed. . . . I assumed she'd pick up the phone, call a local PD down here [in Bernalillo County] and say, 'Get a writ filed with some district judge down here' . . . .

Aplt's App. vol. I, doc. 6, at 000159 (Mr. Tupler's deposition testimony).

According to Ms. Herrmann, "[t]he only 'agreement' . . . was that Reed would not

be released to Ohio authorities until the New Mexico Supreme Court ruled on the

petition for Reed's release or for stay of extradition." Aplt's App. vol. II, doc.

10, at 000448-49 (Ms. Herrmann's affidavit).

After coming to the agreement with Ms. Herrmann, Mr. Tupler contacted

Ms. Marquez and informed her of the arrangement. According to Ms. Marquez,

Mr. Tupler advised her that "the extradition would wait pending the decision [of

the New Mexico Supreme Court]." Aplt's App. vol. I, doc. 6, at 000131 (Ms.

Marquez's deposition testimony). Ms. Marquez thus did not initiate extradition

proceedings by filing a fugitive complaint.

On November 22, 1996, Mr. Tupler received a letter from Ms. Herrmann

that outlined the terms of the agreement as she understood them. According to

Mr. Tupler, he later contacted Ms. Herrmann and told her that she had

misinterpreted the agreement. He also told Ms. Marquez, several months later,

that Ms. Herrmann's understanding of the agreement was overbroad.

Also on November 22, 1996, Ms. Herrmann sent a letter to the BCDC. The

letter, which was addressed to Joe Gutierrez and Will Bell (both BCDC

employees), instructed that Mr. Reed was not to be released to Ohio: "[Mr.]

Tupler . . . has agreed with me that *no proceedings will be initiated* to return Mr.

Reed to Ohio pending resolution of the current petition before the Supreme Court. . . . Mr. Reed has *not waived* his formal right to extradition and does not consent to his return to Ohio." Aplt's App. vol. II, doc. 9, at 000390 (letter, dated Nov. 22, 1996) (emphasis added).

Meanwhile, Mr. Reed, while in jail, proceeded to send letters to several of the Prosecutor and BCDC Appellees. In the letters, Mr. Reed stated that Ms. Herrmann was representing him on the Taos County matter, that he had no counsel for the Bernalillo County matter, and that he wanted to appear before a judge. The Appellees – with the exception of Michael Sisneros, the Director of the BCDC – deny or do not recall receiving any letters. According to Mr. Sisneros, he relayed the letter he received to Mr. Gutierrez because "he was the one that could best handle this. He used to be the court liaison person for the jail." Aplt's App. vol. II, doc. 9, at 000474 (Mr. Sisneros's deposition testimony).

On December 3, 1996, Mr. Reed learned that he had a BCDC caseworker, David Sherman. Mr. Reed wrote to Mr. Sherman immediately, making the same claims as in his other letters, but received no response until two weeks later, at which time he was allowed to call an attorney.

On December 6, 1996, a "decision" was made to return Mr. Reed to Ohio based on the waiver of extradition that Mr. Reed had signed as a condition of

parole in 1992. See Aplt's App. vol. II, doc. 10, at 000489 (facsimile from Ms. Marquez to Ohio, dated Dec. 12, 1996). The Prosecutor Appellees deny or do not recall participating in a decision to return Mr. Reed on the waiver. A few days later, Ms. Marquez faxed a message to Mr. Tupler, informing him that Ohio was proceeding with the extradition of Mr. Reed. The facsimile included a copy of the letter that Ms. Herrmann had sent to the BCDC.

On December 12, 1996, the New Mexico Supreme Court granted a stay of any extradition proceedings until it decided the Taos County appeal. A few days later, state Judge Albert "Pat" Murdoch held a hearing on the Bernalillo County matter. Mr. Cheves represented the state on the matter, and Ray Twohig represented Mr. Reed. Judge Murdoch concluded that he was bound by Judge Nelson's ruling and ordered that Mr. Reed be released from custody. Mr. Reed was released from the BCDC later that day.

On September 9, 1997, the New Mexico Supreme Court affirmed Judge Nelson's order, holding that Mr. Reed was entitled to a writ of habeas corpus because he was not a fugitive. See Ortiz II , 947 P.2d at 105-12. Almost a year later, the United States Supreme Court reversed the state supreme court's decision in a per curiam decision. See generally New Mexico ex rel. Ortiz v. Reed , 524 U.S. 151 (1998) [hereinafter Ortiz III ].

-13-

III. DISCUSSION

A. Summary Judgment for Prosecutor Appellees

With respect to the Prosecutor Appellees, Mr. Reed contests only the district court's ruling on his § 1983 claims. As noted above, the district court held that the Prosecutor Appellees were entitled to summary judgment on these claims because they were protected by absolute immunity or, in the alternative, qualified immunity. We need not address the district court's decision on absolute immunity because the matter may be resolved on the basis of qualified immunity alone.

1. Standard of Review

We review a grant of summary judgment de novo, applying the same legal standard employed by the district court. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings.

Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995) (internal quotation marks omitted). When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. See Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right[] the defendant allegedly violated [was] clearly established at the time of the conduct at issue." Albright v. Rodriguez, 51 F.3d 1531, 1534-35 (10th Cir. 1995) (citations omitted). A right is clearly established only if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." Id. at 1535 (internal quotation marks omitted). Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

2. Clearly Established Constitutional or Statutory Right

Mr. Reed concedes that the Prosecutor Appellees ordinarily have qualified immunity. He contends, however, that they cannot assert this defense in the instant case because, at the time of his incarceration, it was clearly established, under the Extradition Clause of the Constitution, U.S. Const., art. IV, § 2, cl. 2; the federal extradition statute, 18 U.S.C. § 3182; and the New Mexico Extradition Act,[1] N.M. Stat. §§ 31-4-10, 31-4-14; that he had a right to certain extradition

[1] The majority of states, including New Mexico, have adopted the Uniform Criminal Extradition Act ("UCEA"), see Cuyler v. Adams, 449 U.S. 433, 436 n.1 (1981), and a number of circuit courts, including this one, have held that a violation of the UCEA can provide a basis for a § 1983 claim on the ground that the state extradition statutes are derivative of or are implementing federal law (i.e., the Extradition Clause and the federal extradition statute). See Sanders v. Conine, 506 F.2d 530, 532 (10th Cir. 1974) ("A complaint which charges abuse of the extradition power by noncompliance with applicable [federal and state] law states a claim under 42 U.S.C. § 1983 and may not be dismissed summarily as frivolous."); Ortega v. City of Kansas City, 875 F.2d 1497, 1500 (10th Cir. 1989) ("[T]here is ample circuit court authority for the proposition that failure to comply with the provisions of the Uniform Extradition Act as enacted by the detaining state can support recovery on § 1983 claims."); see also Draper v. Coombs, 792 F.2d 915, 921 (9th Cir. 1986) ("[A] violation of state extradition law can serve as the basis of a section 1983 action where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States.") (internal quotation marks omitted); Ross v. Meagan, 638 F.2d 646, 649-50 & n.4 (3d Cir. 1980) ("[Appellants] may be entitled to relief under § 1983 [if appellees violated the UCEA]."); Crumley v. Snead, 620 F.2d 481, 483 n.9 (5th Cir. 1980) ("A failure to comply with extradition procedures is actionable under Section 1983.") ; Brown v. Nutsch, 619 F.2d 758, 764 & n.8 (8th Cir. 1980) ("We hold that section 1983 provides a remedy for improper extradition in violation of the extradition clause and statute [including some state statutes]."); McBride v. Soos, 594 F.2d 610, 613 (7th Cir. 1979) ("[W]here plaintiff has alleged violation of rights protected by federal law, and violation of rights protected by state law derived from federal law, we hold that a complaint which

(continued...)

-16-

procedures, such as the filing of a fugitive complaint and an arraignment. He also argues that it was clearly established, under the Equal Protection Clause, that his case should not have been "the only [one] in the [district attorney's] office in which no fugitive complaint was filed and no arraignment was held." Aplt's Br. at 8 (No. 99-2215).

We reject these arguments and hold that, because Mr. Reed had previously signed a waiver of extradition as a condition of parole, he had neither a constitutional nor a statutory right to specific extradition procedures. Mr. Reed, in essence, admits that he signed the waiver. See Aplt's App. vol. I, doc. 6, at 000199 (Mr. Reed's deposition testimony) (stating that the signature on the waiver "appear[ed]" to be his). His contention is that he did not sign the waiver voluntarily and therefore the waiver was invalid. See, e.g., Pierson v. Grant, 527 F.2d 161, 164-65 (8th Cir. 1975) (requiring a voluntary and knowing waiver); Hinton v. Moritz, 11 F. Supp. 2d 272, 275 (W.D.N.Y. 1998) (noting that plaintiff

_____

(...continued)
charges abuse of the extradition power by noncompliance with applicable law states a cause of action under 42 U.S.C. § 1983."); Wirth v. Surles, 562 F.2d 319, 322 (4th Cir. 1977) ("Where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States, a cause of action is stated under 42 U.S.C. § 1983."). But see Barton v. Norrod, 106 F.3d 1289, 1295-96 & n.6 (holding that the extradition procedures are a matter of state law); see also id. at 1296 n.6 (listing district courts that have reached the same holding).

-17-

did not allege his signing of the waiver was not knowing and voluntary). In his deposition testimony, Mr. Reed explained that he agreed to sign the parole "contract" only because "they were going to leave me in solitary confinement for 15 more years if I didn't put my name on [the waiver]." Aplt's App. vol. I, doc. 6, at 000200 (Mr. Reed's deposition testimony).

We are doubtful that Mr. Reed's statement, by itself, establishes coercion. See Forester v. California Adult Authority, 510 F.2d 58, 61 (8th Cir. 1975) (holding that the conditioning of parole on the execution of an extradition waiver is not per se coercion); see also Pierson, 527 F.2d at 164 ("[P]arole is an act of grace and . . . boards of parole have wide discretion to impose reasonable conditions in connection with parole. . . . [There must be a] *specific showing* of how such a condition was coercive as applied in the particular case.") (emphasis added). Mr. Reed argues, however, that there was a coercive element in the execution of the waiver given his rocky relationship with the Ohio prison officials. See generally Ortiz II, 947 P.2d at 86 (discussing Mr. Reed's reputation as an advocate for prisoners' rights and the resentment expressed by Ohio prison officials). But even if we assume that there was coercion, there is no evidence in the record – indeed, Mr. Reed does not even allege – that the Prosecutor Appellees had or should have had any reason to know that the waiver was signed

involuntarily. [2] Because the waiver was facially valid, it was objectively reasonable for the Prosecutor Appellees to rely on the waiver. [3] Cf. United States v. Leon, 468 U.S. 897, 919-20 (1984) (holding that the Fourth Amendment exclusionary rule should not bar the use of evidence obtained by police officers acting in good faith and with reasonable reliance on a facially valid search warrant).

B. Summary Judgment for BCDC Appellees

With respect to the BCDC Appellees, Mr. Reed appeals the district court's decision on both his § 1983 and false imprisonment claims.

1. Thirty-Day Imprisonment

a. Section 1983

Mr. Reed explains in his brief that "[t]his lawsuit [against the BCDC Appellees] is not . . . about conditions at [the prison]." Aplt's Br. at 21 (No. 00-

---

[2] Ms. Marquez and Mr. Tupler, evidently, did see Ms. Herrmann's letter to the BCDC, in which she claimed that Mr. Reed had not waived his formal right to extradition. See Aplt's App. vol. II, doc. 9, at 000390 (letter, dated Nov. 22, 1996). However, Ms. Herrmann never clarified in the letter that Mr. Reed did not waive his right because he had signed the waiver of extradition *involuntarily*.

[3] Even if Mr. Reed could overcome the qualified immunity defense, he still might not recover damages because, arguably, he was not prejudiced by the failure of the Prosecutor Appellees to afford him the full extradition process. See Kennon v. Hill, 44 F.3d 904, 907 (10th Cir. 1995) (in a habeas corpus appeal, agreeing with the conclusion that the plaintiff was not prejudiced by the noncompliance with the UCEA because "he had previously received such a hearing . . . and henceforth has been represented by counsel and has been fully aware of the charges against him").

2216). Rather, the suit is about "[Mr.] Sisneros and his staff at BCDC intentionally ignor[ing] Judge Nelson's Order [for thirty days] and intentionally ignor[ing] [his] written and verbal requests . . . for an attorney and for a hearing." Aplt's Br. at 22-23 (No. 00-2216). As noted above, we review the district court's order of summary judgment de novo, and we hold, as we did above, that Mr. Reed's claims fail because the BCDC Appellees were protected by qualified immunity.

We address first the significance of Judge Nelson's order. Under New Mexico law, a prisoner may be released upon the issuance of a court order:

> Every public officer who has power to order the imprisonment of any person for violation of law shall, on making such order, transmit to the sheriff, jail administrator[,] or independent contractor of his respective county a true copy of the order so that the person imprisoned may be considered under his custody until expiration of the commitment or until further steps, as provided by law, are taken to obtain the prisoner's liberty, of which he shall, in due time, notify the sheriff, jail administrator[,] or independent contractor in writing.

N.M. Stat. § 33-3-12(A). As Mr. Reed points out, Judge Nelson's order did grant him a writ of habeas corpus, thereby freeing him from imprisonment; however, the order only instructed that Mr. Reed be released from the TCADC, not the BCDC. See Ortiz I, 1995 WL 118952, at *8 ("It is therefore ordered . . . [t]hat petitioner be released immediately from the Taos County [Adult] Detention Center.").

-20-

Given the terms of Judge Nelson's order, we fail to see how Mr. Reed had either a constitutional or statutory right to be released from the BCDC. Mr. Reed is, in essence, arguing that the BCDC Appellees should have released him on the basis of Judge Nelson's *reasoning* rather than the strict terms of the order. Because Mr. Reed cannot establish a constitutional or statutory right, he cannot overcome the BCDC Appellees' qualified immunity. We note that, even if Mr. Reed had a constitutional or statutory right to be released on the basis of Judge Nelson's order, it was not clearly established, at the time of Mr. Reed's incarceration, that the order was valid as to the BCDC Appellees when it did not specify the BCDC by name.

Mr. Reed suggests, however, that knowledge of the order should, at the very least, have prompted the BCDC Appellees to investigate the matter – for example, by contacting Judge Nelson. See Aplt's App. vol. II, doc. 9, at 000475-476 (Mr. Sisneros's deposition testimony) ("[W]e wouldn't release this person because obviously this isn't an order to the BCDC in the Second Judicial District. We would probably hold on to it and either contact the Court and ask them for direction as to what they wanted to do with this – we have a release order, but it's not a valid one."). While we do not endorse the BCDC Appellees' failure to pursue the matter – a simple phone call might have expedited resolution of Mr. Reed's case – we conclude that the BCDC Appellees were not required by either

the Constitution or statute to investigate independently Mr. Reed's claim that he should be released within this time frame. See Thompson v. Duke, 882 F.2d 1180, 1186 (7th Cir. 1989) ("On the basis of [Baker v. McCollan, 443 U.S. 137 (1979)], Hardiman and Patrick, as mere jailers, only had a duty to determine the facial validity of the warrant under which [defendant] was held; they had no independent duty to investigate [defendant's] claims of innocence."); see also Baker, 443 U.S. at 145-46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim."). Thus, once again, the BCDC Appellees are protected by qualified immunity.

We next address Mr. Reed's allegation that the BCDC Appellees intentionally ignored his requests for an attorney [4] and a hearing. Mr. Reed's claim here is, in essence, a reiteration of his claim against the Prosecutor

---

[4] Mr. Reed was able to contact several attorneys while incarcerated. Even if we exclude Ms. Herrmann on the basis that she represented Mr. Reed on the Taos County matter only, Mr. Reed spoke to at least three other attorneys during his time at the BCDC. See Aplt's App., vol. II, doc. 9, at 000377 (Mr. Reed's deposition testimony) (naming Mr. Weiner, Peter Cubra, and Sue Morrison).

Appellees:  By failing to initiate extradition proceedings – which would provide for appointment of counsel (if Mr. Reed qualified as indigent) and an arraignment – the BCDC Appellees violated his right to extradition process.  The problem with this argument is that the authority to initiate extradition proceedings lies not with the BCDC Appellees but rather with the District Attorney's office.  Mr. Reed, however, suggests that the BCDC Appellees should have taken some sort of action in response to his requests, such as contacting the District Attorney's office so that it would be informed as to his situation.  He stresses, in particular, Mr. Sherman's failure to communicate with the District Attorney's office, or even the court, as such communications seemed to fall within his job responsibility as caseworker.   See Aplt's App. vol. II, doc. 10, at 000473 (Mr. Sisneros's deposition testimony) ("It's just a mutiquasi-type [sic], counselor-type individual that would hand problems and facilitate communication or items for that inmate to the courts, to the DA, public defender, on and on.")  This argument is, in effect, that the BCDC Appellees should have conducted an investigation based on Mr. Reed's requests, but, as we have already established, such action is not required of the BCDC Appellees by either the Constitution or statute, at least within this time frame.   See Thompson , 882 F.2d at 1186 (holding that jailers had no independent duty to investigate).  Therefore, the BCDC Appellees cannot be held liable because of qualified immunity.

-23-

### b. False Imprisonment

Under the New Mexico Tort Claims Act, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived." N.M. Stat. § 41-4-4(A). The immunity granted, however, does not apply to false imprisonment when caused by law enforcement officers while acting within the scope of their duties. [5] See N.M. Stat. § 41-4-12. Because immunity principles do not resolve this issue, we apply the "traditional" standard of review for summary judgment, in which the moving party bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Mitchell v. City of Moore, 218 F.3d 1190, 1197 (10th Cir. 2000). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts" from which a rational trier of fact could find for the nonmovant. Mitchell, 218 F.3d at 1197. If the

---

[5] "Law enforcement officer" is defined as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order[,] or to make arrests for crimes, or members of the national guard when called to active duty by the governor." N.M. Stat. § 41-4-3.

nonmovant fails to establish a genuine issue of material fact, then "we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

We determine that summary judgment was properly awarded to the BCDC Appellees because Mr. Reed failed to set forth specific facts from which a rational trier of fact could find in his favor. To prove a claim of false imprisonment, Mr. Reed was required to show that (1) the BCDC Appellees intentionally confined or restrained him without his consent and (2) the BCDC Appellees knew that they had no lawful authority to do so. See Diaz v. Lockheed Electronics, 618 P.2d 372, 376 (N.M. Ct. App. 1980). Mr. Reed cannot satisfy the second element. The BCDC Appellees believed they had the lawful authority to imprison Mr. Reed based on the NCIC hit, cf. United States v. Hines, 564 F.2d 925, 927 (10th Cir. 1997) (noting that information received from the NCIC computer bank has been routinely accepted in establishing probable cause for a valid arrest), and, as discussed above, nothing – including Judge Nelson's order – affected this belief. The BCDC Appellees' knowledge of Judge Nelson's order cannot, as Mr. Reed would have it, be equated with a knowledge of an unlawful detention.

-25-

## 2. One-Hour Delay in Release

Mr. Reed also suggests he has claims pursuant to § 1983 and the New Mexico Tort Claims Act because, after Judge Murdoch ordered his release, a BCDC employee detained him one hour longer than the other prisoners for being a "sniffler." As a preliminary matter, we note that none of the BCDC Appellees was involved in the delay. Consequently, Mr. Reed has no § 1983 claims against the BCDC Appellees, regardless of the lawfulness of the detention. See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) (holding that "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation").

As for claims of false imprisonment, neither Mr. Gutierrez nor Mr. Sherman can be held liable because, once again, neither was involved in the prolonged detention of Mr. Reed. As for Mr. Sisneros, the situation might be different due to his position as Director of the BCDC. The question we must address is whether Mr. Sisneros, as the Director of the BCDC, can be held vicariously liable for the purported intentional tort committed by the BCDC employee.

> The definition of vicarious liability is indirect legal responsibility. . . . Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has

> been determined that, irrespective of fault, a party should be held to respond for the acts of another.

Kinetics, Inc. v. El Paso Prods. Co., 653 P.2d 522, 527 (N.M. Ct. App. 1982) (citations omitted). Under the principles of agency and respondeat superior, vicarious liability may be imposed on a principal or employer for the acts of an agent or employee. See Silva v. State, 745 P.2d 380, 385 (N.M. 1987) (noting that doctrine of respondeat superior applies under Tort Claims Act); see also Restatement (Second) of Agency § 2 (naming respondeat superior as a type of agency relationship).

We determine that, under the circumstances, Mr. Sisneros cannot be held vicariously liable: Nothing in the record discloses the nature of the relationship between Mr. Sisneros and the BCDC employee; furthermore, Mr. Sisneros's supervisory position does not, by itself, establish him as principal/master and the BCDC employee as agent/servant. See, e.g., Yorston v. Pennell, 153 A.2d 255, 259-60 (Pa. 1959) ("In determining whether a person is the servant of another it is necessary that he not only be subject to the latter's control or right of control with regard to the work to be done and the manner of performing it but that this work is to be performed on the business of the master or for his benefit. . . . On the other hand, the right to supervise, even as to the work and the manner of performance, is not sufficient; otherwise a supervisory employee would be liable for the negligent act of another employee though he would not be the superior or

-27-

master of that employee in the sense the law means it."); Connell v. Hayden, 443 N.Y.S.2d 383, 397 (1981) ("The doctrine of respondeat superior does not apply to impose vicarious liability upon supervisors. . . . This does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part.") (citations omitted).

C. Sua Sponte Summary Judgment

Mr. Reed's last argument on appeal is that the district court erred in granting summary judgment to Prosecutor Appellees Mr. Rackstraw, Ms. Marquez, and Ms. Silva and BCDC Appellees Mr. Gutierrez and Mr. Sherman. These Appellees were not a part of the original lawsuit filed on January 30, 1998. Rather, Mr. Reed asked the court, on February 16, 1999, to permit him to join these Appellees as defendants, and, on June 1, 1999, the district court granted his request. The very next day, the district court responded to the summary judgment motions filed by (1) Mr. Udall, Mr. Tupler, and Mr. Schwartz and (2) the City of Albuquerque and Mr. Sisneros. Not only did the district court, in its orders, hold in their favor, but it also held, sua sponte, in favor of the newly joined Appellees.

We have held that "[a] court may grant summary judgment sua sponte so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.,

-28-

131 F.3d 874, 892 (10th Cir. 1997) (internal quotation marks omitted).  Here, it is undisputed that Mr. Reed was not given notice of the district court's intent to enter summary judgment in favor of the additional Appellees.          See Aples' Br. at 28 (No. 00-2215); Aples' Br. at 26 (No. 00-2216).

While the practice of granting summary judgment sua sponte is not favored, see Bridgeway Corp. v. Citibank    , 201 F.3d 134, 139 (2d Cir. 2000) ("The provision of . . . notice requires relatively little time or effort . . . ."), we hold that the lack of notice was not prejudicial to Mr. Reed and therefore do not reverse. See Mannesman Demag Corp. v. M/V Concert Express     , 225 F.3d 587, 595 (5th Cir. 2000) (applying harmless error review);      Bridgeway , 201 F.3d at 140 (same); Nuclear Transport & Storage, Inc. v. United States      , 890 F.2d 1348, 1351 (6th Cir. 1989) (same)).  While Mr. Reed might have been surprised by the district court's action, the "surprise [did not] result[] in [his] failure to present evidence in support of his position."     Bridgeway , 201 F.3d at 139.  The record already established the actions taken by the "sua sponte" Appellees, and we fail to see what additional evidence Mr. Reed might have offered that would change the resolution of his case.  Mr. Rackstraw, Ms. Marquez, and Ms. Silva would still have qualified immunity because Mr. Reed was not entitled to extradition process given the facially valid presigned waiver; Mr. Gutierrez and Mr. Sherman would still have qualified immunity because neither had a duty under the Constitution or

statute to investigate Mr. Reed's claim.  Though somewhat of an oversimplification, we simply see no real difference between the Appellees who filed motions for summary judgment and the "sua sponte" Appellees.

## IV.  CONCLUSION

Mr. Reed cannot assert § 1983 claims against the Prosecutor and BCDC Appellees because they are protected by qualified immunity; nor can he assert false imprisonment claims against the BCDC Appellees because they did not know they had no lawful authority to confine him.  Because of these reasons, and because Mr. Reed was not prejudiced by the district court's grant of summary judgment sua sponte, we AFFIRM the district court's order.