NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1647
_____

ROGER G. KORNEGAY,
Appellant

v.

WARDEN DAVID J. EBBERT
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1:11-cv-02344)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 18, 2012

Before:  RENDELL, FISHER and GARTH, Circuit Judges

(Opinion filed: October 22, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM

Roger Kornegay appeals the denial of his habeas corpus petition, which was filed

pursuant to 28 U.S.C. § 2241.  We will affirm.

At the time this action began, Kornegay was in federal custody at FCI Allenwood

in White Deer, Pennsylvania, serving a sentence arising out of a probation violation.  See

D. Neb. Crim. No. 8:07-cr-00430, ECF Nos. 17–18. On October 14, 2011, Allenwood's warden, respondent David Ebbert, received a "request for temporary custody" ("Form V") pursuant to Article IV of the Interstate Agreement on Detainers ("IAD") from an assistant district attorney in Pender County, North Carolina, pertaining to a North Carolina criminal matter. Kornegay wrote to Ebbert, asking for the extradition request to be denied because, inter alia, the Form V did not "have proper documentation attached to it"; he also asked for a pre-transfer hearing and for appointment of counsel. Inmate Request to Staff, ECF No. 2. In his answer, Ebbert observed that his actions were governed by Bureau of Prisons Program Statement 5130.06, and notified Kornegay that he was "grant[ing North Carolina's] request for temporary custody." Inmate Request to Staff Response, ECF No. 2.

In response, Kornegay petitioned for a writ of habeas corpus, asserting his right to a hearing and alleging numerous deficiencies in the materials provided by the North Carolina authorities. Kornegay relied principally on Cuyler v. Adams, 449 U.S. 433 (1981), which held that "prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." Id. at 450. "Therefore," Kornegay argued, "the evidence clearly shows that Warden Ebbert has no intentions of complying with an extradition hearing and granting [Kornegay] his rights under the US Constitution,

2

Article IV, [Section] 2, Clause 2."[1]  Mem. ¶ 3, ECF No. 2.  However, the Government

pointed out a crucial defect in Kornegay's argument: <u>Cuyler</u>, which dealt in part with the

Uniform Criminal Extradition Act (UCEA), did not apply because "the United States has

neither adopted the [UCEA] nor enacted any other statute providing the right of hearing."

Resp. 3, ECF No. 8.  The District Court agreed, denying both Kornegay's petition and his

request for a temporary restraining order to prevent his extradition.  <u>See</u> <u>Kornegay v.</u>

<u>Ebbert</u>, No. 1:11-CV-2344, 2012 WL 719025 (M.D. Pa. Mar. 1, 2012).  Kornegay timely

appealed.

　　We have jurisdiction under 28 U.S.C. § 1291.[2]  A certificate of appealability is not

required.  <u>United States v. Cepero</u>, 224 F.3d 256, 264–65 (3d Cir. 2000), <u>abrogated on</u>

<u>other grounds by</u> <u>Gonzalez v. Thaler</u>, ___ U.S. ___, 132 S. Ct. 641 (2012).  Because this

appeal rests on matters of law, our review is de novo.  <u>See</u> <u>O'Donald v. Johns</u>, 402 F.3d

172, 173 n.1 (3d Cir. 2005) (per curiam).  We may affirm for any reason supported by the

record.  <u>Alexander Hamilton Life Ins. Co. of Am. v. Gov't of V.I.</u>, 757 F.2d 534, 547–48

(3d Cir. 1985).

---

[1] The Extradition Clause of the United States Constitution provides that a "Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."  U.S. Const. art. IV, § 2, cl. 2.

[2] Kornegay has since been extradited to North Carolina.  While this moots his request for a temporary restraining order, it does not otherwise affect his habeas corpus petition, because he remains "in custody" and, as the Government concedes, this Court could

The District Court correctly determined that Kornegay was not entitled to a hearing or other relief under the IAD and UCEA. Whereas a prisoner transferred under the UCEA is entitled to a pre-transfer hearing, no similar provision is found in the IAD. Cuyler, 449 U.S. at 443; see also id. at 436 n.1 (discussing the ambit of the IAD and UCEA, as well as to whom they apply). Cuyler emphasized that persons transferred under the IAD do not relinquish other rights they may have; however, unless the "sending" jurisdiction is a party to the UCEA, a right to a pre-transfer hearing does not attach. See id. at 448. Contrary to Kornegay's assertions, the sending jurisdiction here is the United States, not Pennsylvania, and "the United States is not a party to the [UCEA], so . . . whatever protections are accorded under that Act could not be applied to [Kornegay], a federal prisoner." Wilson v. Fenton, 684 F.2d 249, 252 (3d Cir. 1982); accord Mann v. Warden of Eglin Air Force Base, 771 F.2d 1453, 1454 (11th Cir. 1985) (per curiam) (citing Wilson). Thus, Cuyler does not extend him the protection he seeks, and Kornegay points to no other source of law that would mandate a hearing.

However, throughout his District Court submissions, Kornegay emphasized that his petition was not premised on the UCEA, but rather on the Extradition Clause, the Due Process Clause, and the Extradition Act, 18 U.S.C. § 3182. See, e.g., Pet'r's Reply 4, ECF No. 9; see also United States v. Hooker, 607 F.2d 286, 288 (9th Cir. 1979) (describing § 3182 as "alternative mechanism for interstate extradition"). Assuming

plausibly still fashion some relief. See 28 U.S.C. § 2241(c); cf. Ehrheart v. Verizon Wireless, 609 F.3d 590, 596 (3d Cir. 2010).

4

arguendo that Kornegay may assail additional elements of his extradition through a § 2241 petition, we find that his claims are without legal foundation. It is well established that the Extradition Clause of the Constitution is not self-executing; rather, 18 U.S.C. § 3182 serves to effectuate the language of the Clause. See, e.g., N.M. ex rel. Ortiz v. Reed, 524 U.S. 151, 152 (1998) (per curiam); California v. Super. Ct. of Cal., 482 U.S. 400, 406 (1987); Mokone v. Fenton, 710 F.2d 998, 1003 n.16 (3d Cir. 1983); United States ex rel. Darcy v. Superintendent of Cnty. Prisons, 111 F.2d 409, 411 (3d Cir. 1940). By its plain statutory language, 18 U.S.C. § 3182 applies to demands by "executive authorit[ies] of any State or Territory" of "executive authorit[ies] of any State, District, or Territory." The United States, which is neither a "State," "District," nor "Territory," is not mentioned. Cf. New York ex rel. Kopel v. Bingham, 211 U.S. 468, 474 (1909) (construing predecessor statute to § 3182 to expand constitutional language beyond "States only" to "the Territories as well as [] the States"). As the Honorable Judge Ditter has observed:

> [A]n examination of the purpose and nature of the extradition obligation reveals its inapplicability to the transfer of custody from the federal government to a state. . . . Th[e] historical objective of extradition—to prevent the territorial boundaries of a state's sovereignty from frustrating its efforts to bring to justice those who violate its laws—obviously has no application to the dual or 'vertical' territorial sovereignty which characterizes the federal-state relationship. . . . Furthermore, to apply the Extradition Act to the federal government would be to impose on it an obligation to deliver up a person within its exclusive jurisdiction on the demand of a state. This is an obligation from which the federal government has long been immune by virtue of the Supremacy Clause. . . . [I]n the absence of an express indication that Congress intended the Extradition Act to operate [to waive immunity], it would be inappropriate to apply its terms

5

to the federal government.

Thomas v. Levi, 422 F. Supp. 1027, 1032–33 (E.D. Pa. 1976) (footnotes and citations omitted); see also Adams v. Cuyler, 592 F.2d 720, 724 n.3 (3d Cir. 1979) (noting the holding in Thomas), aff'd, Cuyler v. Adams, 449 U.S. 433 (1981).  Because one of the two jurisdictions here was the United States, Kornegay could not state a claim under 18 U.S.C. § 3182.  Nor has he pointed to a case that would suggest any constitutional infirmity of the pre-extradition process afforded to him by the relevant Bureau of Prisons program statement.  See Mann, 771 F.2d at 1454; see also Michigan v. Doran, 439 U.S. 282, 287–89 (1978).[3]

For the foregoing reasons, we will affirm the judgment of the District Court. Kornegay's motion requesting extradition from Pender County is denied.

---

[3] We have examined the cases cited by Kornegay, but none supports his position.  He does accurately quote Trafny v. United States, No. 2:06-CV-578, 2007 WL 2815436 (D. Utah Sept. 25, 2007), in which the District Court for the District of Utah observed, in passing, that the UCEA would apply to "federal-to-state[] or state-to-state transfers under the IAD."  Id. at *2.  This may simply be a mistake; alternatively, Trafny is most plausibly read as pertaining to the wording of Utah's UCEA implementation, which would require a pre-transfer hearing in a transfer to Utah *if* the United States were a signatory to the UCEA, which it is not.  In any case, the Tenth Circuit clarified on appeal that the "protections of Utah's UCEA only apply to transfers between actual states of the Union."  Trafny v. United States, 311 F. App'x 92, 95 (10th Cir. 2009) (non-precedential).